145 N.J. Super. 27 (1976)
366 A.2d 999
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MARY E. HENDRICKS AND JOHN TURNER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1976.
Decided November 8, 1976.
*29 Before Judges CARTON, KOLE and LARNER.
Mr. Gerald M. Compeau, Jr., Assistant Prosecutor, argued the cause for appellant (Mr. Compeau, on the brief).
Mr. David L. Kervick, Assistant Public Defender, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney; Mr. David L. Kervick, Assistant Public Defender, of counsel and on the brief).
*30 The opinion of the court was delivered by KOLE, J.A.D.
The trial judge entered orders suppressing evidence seized in the "apartment" of Jackson to the extent that such evidence related to or might be used with respect to defendants Hendricks and Turner. Jackson was not a party to the motion to suppress. The State appeals by leave granted.
The issue on this appeal is whether the trial judge properly found and concluded, from the proofs before it, that the police affidavit supporting the search warrant failed to describe the apartment here involved with the accuracy required by the Fourth Amendment, thereby resulting in (1) the execution of the warrant with respect to Jackson's apartment, for which there was no authority, (2) an unlawful invasion of Jackson's privacy as a citizen, and (3) the seizure of evidence from that apartment which must be suppressed as to defendants Hendricks and Turner.
We hold that the proofs, including the affidavit of the police officer, Gravina, do not support these findings and conclusions. Hence, we reverse. See State v. Johnson, 42 N.J. 146, 162 (1964).
The following appears from officer Gravina's affidavit in support of the warrant: He had probable cause and good reason to believe that Gregory Fisher and Mary Hendricks resided at 527 West Fifth Street, first-floor apartment, Plainfield, and that they were in possession of heroin at those premises. He described Fisher and Hendricks and stated that Fisher had been arrested for possession of marijuana and heroin. He described the premises at 527 West Fifth Street as a 2 1/2-story wooden dwelling, with the first floor colored brown, and the second floor colored pink, an open front porch on both the first and second floors and the numeral "527" appearing in black on the center post between the two front doors. He detailed the prior police surveillance of the premises and the activities occurring in connection therewith, including persons going into the first-floor apartment after knocking on the left *31 front door of the house, and later exiting therefrom. He also had seen Fisher and Hendricks leaving the first-floor apartment. A very reliable informant in narcotics cases had given Gravina data indicating that Fisher, Jackson and Stallings "are dealing heroin from Fisher's house at 527 West Fifth Street," and that "they often cut and bag the heroin at the house next to 527 West Fifth Street"  i.e., 525 West Fifth Street. On February 26, 1974 at about 8 P.M., and on May 23, 1974 at about 11 P.M., the informant had entered the front door at 527 West Fifth Street and had purchased heroin from Fisher with money supplied by the police. He also advised the police that on May 23 Fisher had gone to the first-floor apartment in the next house  525 West Fifth Street  to obtain the heroin sold to the informant on that day.
The affidavit sought a search warrant permitting a search of the first-floor apartment at 527 West Fifth Street where Fisher and Hendricks "allegedly reside," as well as a search of their persons. It is reasonable to read the warrant as ordering a search of the "premises commonly known * * * as the first floor apartment at 527-West Fifth Street, Plainfield" and the persons of Fisher and Hendricks.
It is plainly evident from the proofs at the suppression motion hearing that the first floor of the building, instead of being an apartment, had been altered so that it consisted of three separate rooms, none of which was interconnected, and a fourth empty room. The usual connecting doors to each room had been boarded up or otherwise sealed. The first floor also contained a common kitchen and bathroom. To get to the kitchen and bathroom, the occupants of the rooms had to use a common hallway. Apparently each room was separately rented to the occupant or occupants thereof. There were no names or numbers on the doors to any of the rooms. The left outside front door to the first floor was the entrance to the floor; anyone seeking a resident of that floor had to knock at the door and wait to be admitted.
*32 According to Fisher's testimony, one family of nine or ten people resided on the second floor. Although Fisher testified that there was a lock on the door of his room, he did not know whether the other doors had locks. Names were apparently affixed to the three mailboxes on the outside of the building. While Hendricks' name was on one of the mailboxes, there is no evidence that either the names of Fisher or Jackson appeared on any of them. Officer Gravina did not recall whether these mailboxes existed.
Upon entering the house to execute the warrant Gravina observed that the first room on his left as he entered (that of Fisher and Hendricks) was unoccupied. He then observed a black male, further down the hall, look at him and run into the second room (that of Jackson) where the search warrant was executed. Fisher, Hendricks, Jackson and Turner were in the room that was searched and from which the evidence was seized. Turner appears to have been a guest of Jackson. As indicated, Jackson is not one of the parties objecting to the search.
It has been stated that the validity of a search warrant depends upon the showing made before the magistrate or judge who issues it, and that "a warrant faulty by reason of its failure to specify the place to be searched should not be approved because only the premises of the defendant were actually searched in pursuance thereof." State v. Ratushny, 82 N.J. Super. 499, 505-506 (App. Div. 1964). However, if the affidavit states that the intended place to be searched is the one actually occupied by the defendant, the description is sufficiently accurate to satisfy the Fourth Amendment. State v. Wright, 61 N.J. 146, 149 (1972). The description of the premises requires no more than "practical accuracy." State v. Daniels, 46 N.J. 428, 437 (1966). See also, State v. Sheppard, 46 N.J. 526 (1966). "The underlying reason for the requirement that there be an adequate description of the premises in a search warrant is to prevent the police officer from entering property which he has no authority to invade." State v. Wright, supra.
*33 Applying these standards, we are satisfied that under the facts of this case it was erroneous for the trial judge to have concluded that the affidavit and warrant did not describe the place to be searched with the degree of accuracy required by law, merely because, in fact, a search was conducted of the separate room occupied by Jackson.
From the police surveillance of the premises and the activities involved with respect thereto, they reasonably concluded that Fisher and Hendricks were occupants of the first-floor apartment of a two-family house. They could not fairly have been expected to obtain a more detailed description from the informer as to the first-floor "separate apartments" layout. It would be contrary to the practical approach to searches pursuant to a warrant to suppress the fruits of this search merely because the informant here did not know or had failed to inform the police that the first floor of what normally would be a two-family house actually consisted of three or four separately occupied rooms using a common hallway to the kitchen and bathroom.
The reasonable inference to be drawn from the proofs at the hearing is that, although each room may have been separately occupied, at least two rooms, including that in which Jackson resided, as well as the common hallway, bathroom and kitchen, were used by Hendricks and Fisher with others, as a single living unit, in connection with the narcotics activities here involved. The description in the affidavit and warrant accorded with the outward appearance of the structure and the data supplied by the informant. Until after they entered the premises the police did not discover, nor under the circumstances here shown could they reasonably have discovered, that, by reason of interior alterations, the first floor had been converted into "separate apartments," one of which was occupied by Jackson. "At that moment it was too late for them, consistent with the success of their mission, to have retreated and obtained a new warrant." United States v. Santore, 290 F.2d 51, 66-67 (2 Cir., 1960), cert. den. 365 U.S. 834, 81 S.Ct. 749, 5 *34 L.Ed.2d 744 (1961). See also, United States v. Gomez, 42 F.R.D. 347 (S.D.N.Y. 1967).
For the purpose of a proper description in the search affidavit and warrant, it cannot be said that the police reasonably knew or should have known that the first floor of this two-family house was being used for the multiple occupancy of persons other than Hendricks and Fisher, as described in the proofs on the motion. Nor would the existence of the three mailboxes outside of the premises fairly be expected to alert them that what appeared to be a first-floor apartment actually contained such "separate apartments." It is consistent with a reasonable inference merely that there were persons residing in the first and second floors, or persons occupying the entire "first floor apartment" in common.
In the factual setting of this case, the designation, "the first floor apartment," in the affidavit and warrant was "as specific a description of the particular area to be searched as the nature of the circumstances reasonably [permitted]," State v. Ratushny, supra, 82 N.J. Super. at 506, and was sufficient to permit a search of all of the rooms on the first floor, including that of Jackson.
On the present record there is no basis for the conclusion of the trial judge that the description in the warrant led to a search of the wrong "apartment which thereby invaded the privacy of a citizen [Jackson] where the police had no authority," or that there "was no reason to fear that [the affiant police officer] would alert the suspects by seeking a further or more accurate description."
The orders of suppression are reversed.