494 A.2d 193

**Harold GARRISON**

v.

**STATE of Maryland.**

**No. 94, Sept. Term, 1984.**

Court of Appeals of Maryland.

June 27, 1985.

Motion for Reconsideration Denied Sept. 3, 1985.

Gerald A. Kroop, Baltimore (Kenneth D. Man and Kroop & Kurland, P.A., Baltimore, on the brief), for appellant.

Ann E. Singleton, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr. Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES C. MORTON, Jr., Judge.

This case presents the question whether a search warrant particularly describing one apartment authorizes a search of an adjacent apartment and a seizure of goods therein, when police executing the warrant mistakenly believed that

the search which they conducted was of the premises covered by the warrant.

On May 21, 1982, Detective Albert Marcus of the Baltimore City Police Department applied for a warrant to search the dwelling of Lawrence Meril McWebb. Detective Marcus alleged in an affidavit in support of a search warrant that he had met with a "proven Confidential Reliable Informant" who told him that McWebb was selling marijuana out of his third floor apartment at 2036 Park Avenue, in Baltimore City. Marcus alleged that he took the following actions to verify McWebb's address:

"Upon receiving the above information from the proven confidential reliable informant your Affiant Detective Marcus went to the premises known as 2036 Park Avenue and found it exactly as the Informant had described as a three story brick dwelling with the numerials [sic] 2–0–3–6 affixed to the front of the premises. Further your Affiant made a check with the Baltimore Gas and Electric Company and discovered that the premises of 2036 Park Avenue third floor was in the name of Lawrence McWebb. Your Affiant Marcus then checked with the Baltimore Police Department and discovered that there was a subject by the name of Lawrence Merial [sic] McWebb, black male date of birth 12/20/31 with an address of 2036 Park Avenue third floor who had been arrested in the past with a B. of I. number of 108–147. According to arrest records the subject McWebb is described as being a black male 5'11" tall weighing 150 pounds. This was exactly as described by Informant."

When Marcus applied for the search warrant, he apparently believed that only one apartment occupied the entire third floor. The search warrant which was issued authorized the police to search for marijuana and related materials "on the person" and "on the premises" of "Lawrence Meril McWebb," at "2036 Park Avenue third floor apartment described as being a three story brick dwelling with the numerals 2–0–3–6 affixed to the front of same." Pursuant to the warrant, several Baltimore City police officers, in-

cluding Marcus, Detective Russell Shea, and Sergeant Joseph Schanken searched the entire third floor of 2036 Park Avenue.[1] As a result of the search, the officers seized evidence from two separate apartments on the third floor, McWebb's and Harold Garrison's, the defendant in this case.

Garrison was subsequently charged with violations of the Controlled Dangerous Substance Act, including Maryland Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.), Art. 27, § 286, possession of heroin with intent to distribute. Garrison moved to suppress the evidence seized from his apartment, arguing at a hearing on the motion "that the officers, not having a warrant for [his] apartment, had no right to go into that apartment and, furthermore, that they knew or should have known that ... the apartment ... was a separate apartment." Schanken, Shea and Marcus offered testimony regarding the manner in which the search was carried out. Garrison and McWebb offered testimony that substantially conflicted with the police account. Judge Thomas, presiding in the Circuit Court for Baltimore City, made the following findings of fact and denied the motion:

"One, that on May 21st, 1982, the police executed a search and seizure warrant for premises 2036 Park Avenue, third floor apartment. Two, the police had reliable information to believe the Defendant McWebb resided in a third floor apartment, did not know of another apartment on the third floor. Now, while [there] was evidence that there were a number of apartments in the building, police were unaware where these apartments were located or the character of the building.

"Three, the Defendant McWebb was detained outside of 2036 Park Avenue. With the keys furnished by him, the police gained entrance through a locked front door to the building, next to the door were seven mail boxes with bells, or indicating were bells under each mailbox, but no names were reflected on any of the mail boxes. Further,

---

1. A diagram of the third floor is set out in the appendix.

McWebb's name was not visible on any of the mail boxes or any area adjacent thereto.

"Next, the police were directed to the third floor by McWebb without any notice or knowledge of the layout of that area. Five, that entrance to the third floor was gained through a common marked door which gave no indication that there was more than one apartment located on said floor. There was no one to alert anyone to indicate that there were more than one apartment.

"Next, that upon opening said door, police found the Defendant Garrison standing there in his night clothes. Next, seven, upon entrance to the third floor, police saw an open door to the left later identified as McWebb's apartment, and also an open door to the right later identified as Garrison's apartment. In fact, no door was visible at the time the police entered and the police were unaware at that time that there were two apartments.

"Eight, that from that position of the hallway area leading to the two apartments, the police saw and based on their expertise located on top of the dresser in an open room to the right, a quantity of marijuana. Entrance was made into that room later identified as the apartment of the Defendant Garrison where a police or the police found over the front door or the door leading to that area articles of men's clothing.

"No numbers were observed by police upon entering the apartment which would alert them to a separate apartment.[2] The room was searched, and in the apartment of the Defendant Garrison was recovered a quantity of heroin and approximately four thousand dollars in cash.

"Nine, also significant or significantly at the time, neither Defendant Garrison nor Defendant McWebb indicated that there were two separate apartments on the

---

2. At the suppression hearing, Garrison offered photographs of the entrances to both apartments into evidence. The pictures showed "3R" beside McWebb's apartment door and "3F" beside Garrison's.

third floor. Ten, that a copy of the search and seizure warrant was given to the Defendant McWebb. The inventory listed all the evidence seized from both apartments without indicating which pieces of evidence were found in each location. Eleven, it is clear that there was a common door which could be opened at the time of the search affording access between the two apartments.

"The evidence indicates that while each apartment or the occupant of each apartment could have privacy by locking this door, nevertheless, there was free access judging from all the evidence at the time the police arrived there between the two apartments, and that the Defendants so intended based on the evidence that has been submitted before me.

\*     \*     \*     \*     \*     \*

"Now, with respect to the search and seizure warrant. The general rule regarding the searches of multiple units for the purpose of satisfying the Fourth Amendment, searching two or more apartments in the same building, is no different than searching two or more completely separate houses. Probable cause must be shown for searching each house, or as the case may be, each apartment. However, there is an exception to this general rule where the multiple unit character of the premises is not externally apparent and is not known to the officer applying for or executing the warrant.

"*It is clear that the warrant specified the premises to be searched as the third floor apartment of the Defendant McWebb,* that the officers did not know that there was more than one apartment on the third floor and nothing alerted them of such a fact until after the search had been made and the items were searched [sic]. In view of these findings, the Court will deny the motion of each Defendant to suppress the evidence." (Emphasis added.)

Thus, despite its denial of the defense motions, the trial court determined that the warrant, on its face, was limited to McWebb's apartment.

Garrison proceeded to trial on a statement of facts with a plea of not guilty. On March 18, 1983, he was found guilty on the heroin charge and sentenced to a 15-year term of imprisonment.

Garrison appealed to the Court of Special Appeals, which affirmed the judgment of the trial court. *Garrison v. State*, 58 Md.App. 417, 473 A.2d 514 (1984). Garrison then filed a petition for a writ of certiorari which this Court granted. 300 Md. 689, 480 A.2d 819.

The question presented here is readily resolved by an examination of elementary search and seizure principles and the uncontested facts of this case. Article 26 of the Maryland Declaration of Rights provides:

"That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article 26 is *in pari materia* with the Fourth Amendment. *Potts v. State*, 300 Md. 567, 576, 479 A.2d 1335 (1984), and cases there cited.

As the Supreme Court has noted, except in special situations, "the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment *unless done pursuant to a warrant." Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981) (emphasis added). As the Court stated in *Cool-*

*idge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971),

> "the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption ... that the exigencies of the situation made that course imperative.' "

*See State v. Wilson,* 279 Md. 189, 194, 367 A.2d 1223 (1977).

■ The Supreme Court commented in *Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980), that

> "[w]hen an official search is properly authorized—whether by consent or by the issuance of a valid warrant—the scope of the search is limited by the terms of its authorization. Consent to search a garage would not implicitly authorize a search of an adjoining house; a warrant to search for a stolen refrigerator would not authorize the opening of desk drawers."

Maryland has also recognized that the scope of a search is limited by the terms of the warrant. *See Wilson v. State, supra,* 279 Md. at 194, 367 A.2d 1223; *Smith v. State,* 33 Md.App. 407, 409, 365 A.2d 53 (1976).

■ With these principles in mind, we turn to those facts in this case which are uncontested. The State concedes, and the trial judge found, that the third floor of 2036 Park Avenue contained two separate and distinct apartments. The trial judge further found that the search warrant covered *only* the premises belonging to McWebb. It is undisputed that the police were authorized to search only one apartment, McWebb's; the warrant did not authorize a search of Garrison's apartment. There is no question as to the validity of the search warrant itself. No argument was made in this Court that any of the exceptions to the warrant

requirement applied here. It is clear, therefore, that the police had no authority to cross the threshold of Garrison's apartment and seize evidence.

The same situation was addressed by the court in *Keiningham v. United States*, 287 F.2d 126 (2d Cir.1960). In *Keiningham*, police secured arrest warrants for several suspects and a search warrant for 1106 Eighteenth Street, N.W. The police entered this address through an open door but discovered none of the suspects in the house. The police lieutenant in charge of the search observed a "freshly cut" door between 1106 and 1108 Eighteenth Street. The lieutenant pushed on the door, which opened. The door led to the second floor rear porch of 1108 Eighteenth Street. The police saw the suspects inside 1108 Eighteenth Street and announced that they had arrest warrants. When the suspects began to run, the police forced open the door, arrested the suspects and seized various gambling materials. In reversing the convictions, the court explained (287 F.2d at 129):

> "The Government contends that, since appellants were using the two houses as a single unit, the search warrant for 1106 should somehow be construed to embrace 1108 as well. It seems to be the Government's theory that 1108 became part of 1106 because of the use to which the two houses were put by appellants. This contention is unsound. We know of no clause in the warrant issued extending the authority granted therein in the event of unforeseen circumstances, and it is well settled that search warrants must be strictly construed. The authority to search is limited to the place described in the warrant and does not include additional or different places."

*See Flowers v. State*, 88 Okl.Cr. 252, 202 P.2d 233 (1949) (warrant authorizing search of specific room in hotel cannot be used to search another separately occupied room). We have the same situation here. Police had a warrant to search McWebb's apartment. They had no warrant to

search Garrison's. They had no justification for entering his premises, regardless of appearances.

At trial and on appeal, the State, citing cases in Maryland and other jurisdictions, argued that a "good faith" exception applies to the facts here. The cases cited by the State are simply inapposite. The State relied primarily on a principle adopted in *United States v. Santore*, 290 F.2d 51 (2d Cir.1960), *cert. denied* 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744 (1961). The State framed the rule discussed in that case as follows:

> "if the building in question from its outward appearance would be taken to be a single-occupancy structure and neither the affiant nor other investigating officers nor the executing officers knew or had reason to know of the structure's actual multiple-occupancy character until execution of the warrant was under way, then the warrant is not defective for failure to specify a subunit within the main building. (brief at 16)."

The State recognizes, however, that the *Santore* situation is not what is presented here. In *Santore*, the warrant covered the premises searched; here, the warrant covered *only* McWebb's apartment. In its brief, the State comments: "Appellee realizes [that the cases cited] are not on all fours with the facts in this case as the police did search the 'right' apartment of McWebb and the 'wrong' apartment of [Garrison]...." (Brief at 18.) [3]

The other cases relied on also involve situations in which the warrant covered the premises searched. In all the cited Maryland cases, the premises searched were precisely the ones described in the warrant. *See e.g., Thomas v. State,* 50 Md.App. 286, 437 A.2d 678 (1981), *cert. denied* 292 Md. 639 (1982); *Delly v. State,* 30 Md.App. 391, 352 A.2d 331, *cert. denied* 278 Md. 720, *cert. denied* 429 U.S. 833, 97 S.Ct.

---

**3.** The Court of Special Appeals also recognized this fact:
"The infallibility of hindsight establishes that the police searched the right (McWebb's) and the wrong (Garrison's) premises." *Garrison v. State,* 58 Md.App. 417, 420, 473 A.2d 514 (1984).

96, 50 L.Ed.2d 97 (1976); *Butler v. State,* 19 Md.App. 601, 313 A.2d 554, *cert. denied* 271 Md. 732 (1974). Similarly, in *State v. Hymer,* 400 So.2d 637 (La.1981); *State v. Ventry,* 439 So.2d 1144 (La.App.1983); *People v. Kinnebrew,* 75 Mich.App. 81, 254 N.W.2d 662 (1977); *State v. Schumann,* 156 N.J.Super. 563, 384 A.2d 201 (1978); *State v. Hendricks,* 145 N.J.Super. 27, 366 A.2d 999 (1976); and *State v. Woodard,* 35 N.C.App. 605, 242 S.E.2d 201 (1978), the courts determined that the search conducted was within the scope of the warrants, each of which authorized a search of an area larger than the premises occupied by the defendants. The State here attempts to turn this allowance of an imprecise description of premises into a "good faith exception" to the warrant requirement. The analogy simply does not work. The warrant in the instant case precisely and unambiguously described the premises to be searched: McWebb's apartment. The police then expanded the search to a second apartment not described or mentioned in the warrant.

Garrison's motion to suppress the evidence should have been granted.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE FOR A NEW TRIAL.

COSTS TO BE PAID BY BALTIMORE CITY.

396

State's Motion Exhibit #2
( Diagram of 3rd Floor )

JT EXT. 29