The appellant, James R. Sadie, was indicted and convicted for the misdemeanor offense of possession of gambling records in the first degree, as proscribed by § 13A-12-24, Code of Alabama 1975. He was subsequently fined $500 plus costs.
The prosecution was based upon the possession of materials which were seized during a search of Sadie's office on October 9, 1982. The search warrant ("Motion to Suppress, Defendant's Exhibit 5") which was issued on October 6, authorized the search of "the premises of 3701 Atlanta Highway" for "any and all gambling records." The warrant was issued on the affidavit ("Motion to Suppress Defendant's Exhibit 4") of Investigators Brantley and Fontaine, who swore to the following:
 "That they are Police Investigators in and for the City of Montgomery, Alabama and they have reason to believe, probable cause to believe, and in fact do believe, that there is being kept stored and concealed within the business located at 3701 Atlanta Highway, Montgomery, Alabama, gambling records. . . ." (emphasis added) *Page 1370 
They based this assertion on the following facts included in the affidavit:
 "A confidential informant hereinafter referred to as `A', personally stated to the affiants that Jim Sadie was engaging in bookmaking operations at 3701 Atlanta Highway doing business as Alabama World Travel. `A' further stated that this operation was a continuing adventure. `A' further stated that within the last three (3) months he has placed bets with Jim Sadie and has had numerous converations with Jim Sadie during the past three (3) months concerning gambling.
 "The facts tending to establish the reliability of `A' are as follows: . . . The Montgomery Telephone Directory shows that Alabama World Travel is located at 3701 Atlanta Highway. The Montgomery City Directory shows Jim Sadie as the president of Alabama World Travel. . . .
 "Further probable cause being that on October 5, 1982, affiant Fontaine removed a plastic bag closed with a twist tie from the curbline beside the building located at 3701 Atlanta Highway. Contained within this bag were pieces of paper. These pieces of paper were pieced together by Affiant Brantley. These pieces of paper are known to the affiants, through their experience, to be papers commonly used by bookmakers to take bets and are gambling records as defined in Section 13A-12-24, Alabama Code. These records are written on stationery from the Alabama World Travel and the desk of Jim Sadie.
 "The above information is based on personal observations of the affiant and is for the purpose of securing a daytime search warrant for 3701 Atlanta Highway and the person of Jim Sadie doing business as Alabama World Travel." (emphasis added)
During the hearing on the motion to suppress,[1] Investigator Fontaine testified that, in addition to the information contained in the affidavit, the judge who issued the warrant was shown some of the trash taken from the curb. This trash included memo sheets with words and figures written by hand and the words "FROM THE DESK OF: Jim Sadie" printed at the top; pages from a small, yellow pad with "Jim Sadie" written at the bottom; and an unsigned letter dated July 17, 1982, written on stationery with the letterhead "ALABAMA WORLD TRAVEL." This last exhibit is evidently a proposed draft of a letter from Sadie offering the addressee a "complimentary membership in GEO, my new travel club." Fontaine testified that no information other than that contained in the affidavit and the trash was given to the judge.
Investigator Brantley testified that, when speaking with the judge, he showed him all the evidence retrieved from the trash; that they spoke briefly about some of the items; and that they discussed the reliability of the informant. He further stated that he and Investigator Fontaine participated in a search of the premises at 3701 Atlanta Highway on October 9. The investigator explained the following sequence of events: While the deputies went to a solid door at the rear of the building and Lieutenant Kelly went to a center door, he, along with Investigator Fontaine, went through the front door. Upon entering a reception area, he went through a door located on the right side of the room and then through an office into another office, where Sadie and a woman were seated. After informing the two occupants that he was a police officer and had a search warrant, he went to a door and let the deputies in. Thereafter, the officers searched only Sadie's office. During cross-examination, Investigator Brantley testified that he understood from the issuing judge and the warrant that he had authority to search only Alabama World Travel. *Page 1371 
An employee of Alabama World Travel testified to the following: Several businesses were located at 3701 Atlanta Highway on October 9: Alabama World Travel; GEO, a travel club; two insurance agencies; and the business of an interior decorator. These last three businesses are located behind Alabama World Travel and GEO. One front door is marked "Alabama World Travel" and the other office on the front is clearly designated "GEO" by a sign. Furthermore, Alabama World Travel and GEO are separate businesses. The room searched is an office in the GEO business; no documents were taken from Alabama World Travel.
During cross-examination by the prosecutor, the employee testified that Sadie owns the travel agency; that he has no office in the Alabama World Travel business; that he is president of the travel club; that the entire building is designated as 3701 Atlanta Highway; that if Sadie receives a call at the travel agency, it can be transferred to GEO; and that the two businesses have a common interior door.
Sadie's daughter, likewise, testified that Alabama World Travel and GEO are clearly designated as separate businesses and that both are separately designated by signs on their doors which were located on the front of the building. She also stated that the two businesses have separate checking accounts and bookkeeping records and that her father owns both businesses.
A diagram of the premises at 3701 Atlanta Highway was introduced. It shows that Alabama World Travel and GEO are adjacent businesses located on the front of the building; that each has not only a front door, but a back door also; and that each has a restroom. It also shows that behind these two businesses are several vacant offices as well as occupied offices.
Sadie contends that the search warrant was defective because it failed to particularly describe the premises to be searched and, thus, that the evidence seized during the search should have been suppressed. The attorney general counterargues (1) that because the two investigators "were very much familiar with the location of the place to be searched," there existed no danger that any of the other businesses located at 3701 Atlanta Highway would be searched; and (2) that the affidavit, which was incorporated by reference into the search warrant, contained a sufficient description.
 I THE SUFFICIENCY OF THE DESCRIPTION OF THE SEARCH WARRANT
We agree with Sadie's assertion that the description of the premises contained in the instant search warrant is too general to validate the search. Both the United States Constitution and the statutory law of Alabama require that a search warrant describe with particularity the place to be searched. U.S. Const., 4th Amend.; Ala. Code § 15-5-3 (1975).
 "The traditional and accepted statement of the particularity required is found in Steele v. United States, 267 U.S. 498, 503 [45 S.Ct. 414, 416, 69 L.Ed. 757] . . . (1925): `[I]t is enough if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended.'
 "`[T]he determining factor as to whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description given is technically accurate in every detail but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant.' United States v. Darensbourg, 520 F.2d 985, 987 (5th Cir. 1975).
". . . .
 "`[T]he scope of the warrant to search is dependent upon the extent of the *Page 1372 
showing of probable cause. The command to search can never include more than is covered by the showing of probable cause to search.' [U.S. v.] Hinton, 219 F.2d [324] at 325. `Therefore, when the structure under suspicion is divided into more than one occupancy unit, probable cause must exist for each unit to be searched.' United States v. Whitney, 633 F.2d 902, 907 (9th Cir. 1980), cert. denied, 450 U.S. 1004
[101 S.Ct. 1717, 68 L.Ed.2d 208] . . . (1981).
 "`[A] search warrant directed against a multiple-occupancy structure will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons.' Annot., 11 A.L.R.3d at 1333. The general rule is that `a search warrant directed at a multiple-occupancy structure will ordinarily be held invalid if it describes the premises only by street number or other identification common to all the subunits located within the structure. What is needed is a description which singles out a particular subunit.' 2 LaFave [Search and Seizure at] 78-9 [(1978)]. See also C. Torcia, 1 Wharton's Criminal Procedure § 166 (12th ed. 1974); 68 Am.Jur.2d Searches and Seizures § 77 (1973)."
State v. Teague, 469 So.2d 1310, 1313-14 (Ala.Cr.App. 1985). Seealso Hutto v. State, 50 Ala. App. 636, 282 So.2d 75 (1973).
In the instant search warrant, the description — "3701 Atlanta Highway" — encompasses five operating businesses; the described place is a commercial building with at least five separate business units. This description totally fails to designate with particularity the premises to be searched as determined by the existence of probable cause because the address is common to all the subunits.
We reject the attorney general's first argument that such deficiency was harmless on the ground that the investigators' personal knowledge minimized the danger that any other business would be searched. A similar argument was rejected by this court in State v. Teague, 469 So.2d at 1313, with the following:
 "`To say that a defendant "was not prejudiced because the search did not extend beyond his apartment, would overlook the fundamental basis of the constitutional requirements" and make "admissibility depend on success of the search" notwithstanding the fact the warrant "vests the officer with selective discretion in determining where he could search."' W. LaFave, 2 Search and Seizure 81 (1978)."
See also United States v. Hinton, 219 F.2d 324, 326 (7th Cir. 1955) (wherein the court noted that even if no innocent persons actually suffered from an unjustified search, the warrant would still be invalid because "[t]he validity of the warrant is dependent on the facts shown in the affidavit before the issuing authority").
Thus, we look to the exceptions to the Fourth Amendment's requirement that the place be described with particularity, which are delineated in State v. Teague, 469 So.2d at 1314 (quotingUnited States v. Parmenter, 531 F. Supp. 975, 979-80 (D.Mass. 1982)) (citations omitted in Teague):
 "`[A] warrant which describes a multiple-family dwelling as the place to be searched and fails to specify a particular sub-unit therein may be upheld in one or more of the following situations:
 "`1. the warrant adequately identifies the sub-unit by naming its occupant. . . .;
 "`2. the officers who applied for and executed the warrant did not know or have reason to know of the multi-unit character of the premises prior to the actual search. . . .;
 "`3. it is shown that defendant exercised dominion or control over the entire premises. . . .;
 "`4. probable cause is established to search the entire premises. . . .;
 "`5. the deficiency of description contained in the warrant can be cured by reference to its supporting affidavit and such affidavit is attached to the warrant *Page 1373 
at the time of its execution and incorporated by reference therein.'"
Clearly, exception one is not applicable; the only description in the warrant is the street address. Exception two is also inapplicable; the attorney general concedes as much when he states in his brief that the two investigators "were very much familiar with the location of the place to be searched." Even if the officers had not known of the building's multi-unit character prior to the search, the question is whether they should have known. 469 So.2d at 1316. Under the unique facts of this case, we can conceive of no reason why the investigators should not have known. The building in question is clearly commercial property containing five separate businesses holding themselves out to the public as such. In light of this exterior evidence that the building has multi-units, we find it inconsequential that the entire building is designated by a single street address. The investigators, with minimal observation, could have discovered prior to the search that the building specified is multi-unit. Exception three is not pertinent because the evidence shows that Sadie does not exercise dominion or control over the entire premises of 3701 Atlanta Highway; his status as owner and lessor of the premises does not meet this criterion. Clearly, exception four is not applicable, for the information provided to the judge did not reveal probable cause to search the entire building.
Thus, we are left with the fifth exception, by which the deficiency of the warrant's description can be cured by (1) reference to the warrant's supporting affidavit, and (2) such affidavit is attached to the warrant at the time of its execution and incorporated by reference in the warrant.
 "[T]he requirements of incorporation by reference and attachment provide the same protection provided by an adequate description on the face of the warrant: clear notice to the executing officer and those subject to search of the authorized scope of the search at the time the warrant is executed."
People v. Macavoy, 162 Cal.App.3d 746, 755-56, 209 Cal.Rptr. 34,40 (1984) (emphasis in original).
The description in the affidavit clearly circumscribes the general description in the warrant. However, the investigators' compliance with the second requirement is not so clear. The warrant incorporates the affidavit by stating that the affidavit "[is] attached hereto and incorporated by reference." However, there is no clear evidence that the affidavit was attached at the time of execution. The only testimony concerning this subject is that of Officer Brantley who stated that he gave the inventory sheet, the warrant, and the affidavit to the deputies and that the deputies had the warrant when it was executed. It is left to our assumption that the affidavit was given to the deputies at the scene.
We have found no Alabama authority defining how an affidavit must be identified to a warrant to cure a deficiency in the description in the warrant. All of the federal Courts of Appeals that have considered this question have concluded that the affidavit may not be used to narrow and sustain the warrant unless the affidavit is physically attached when the warrant is executed as well as being textually incorporated. See People v.Tockgo, 145 Cal.App.3d 635, 193 Cal.Rptr. 503 (1983) for a list of representative cases. See, e.g., also United States v.Weinstein, 762 F.2d 1522, 1531, modified on rehearing on othergrounds, 778 F.2d 673 (11th Cir. 1985).
However, the application of this rule is not as simple and precise as the rule appears to be. In contrast to the rigidity of the rule is the approach taken by the Court of Appeals for the Eleventh Circuit. It has advocated a more flexible approach in determining whether the requirements of the rule were fulfilled and has intimated that it is sufficient that the affidavit is available at the search site and that the search officers know the scope of the warrant. United States v. Wuagneux,683 F.2d 1343, 1351 n. 6 (11th Cir. 1982), cert. denied, 464 U.S. 814,104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (discussing the court's holding inUnited *Page 1374 States v. Haydel, 649 F.2d 1152 (5th Cir.), corrected,664 F.2d 84 (5th Cir. 1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1721,72 L.Ed.2d 140 (1982)). In Haydel, 649 F.2d at 1157, in ruling that the affidavit could be considered, the court considered the facts in light of its conclusion that the burden of proof on a motion to suppress is on the defendant. The court rested its holding on the facts that the affidavit appears in the record with the warrant and the officers knew that they were looking for the place actually searched. The court also presumed that had the defendant asked to see the warrant, he would have been shown the warrant and the affidavit together. Id.
However, for purposes of this appeal, we will presume that the instant affidavit can be utilized to supply the deficiency of the description in the warrant. For the reasons explained below, we need not determine at this time what facts we think must be present to permit the affidavit to be identified with the warrant for the purpose of curing a deficiency in the warrant's description.
 II THE EXECUTION OF THE SEARCH WARRANT
Assuming arguendo that the deficiency of description in the warrant could be supplied by the affidavit, there still remains the problem of whether the executing officers exceeded the permissible scope of the description supplied by the affidavit. The affidavit requests a warrant for "3701 Atlanta Highway and the person of Jim Sadie doing business as Alabama World Travel." The other references in the affidavit to the alleged location of the gambling records are references to "Alabama World Travel." Yet, the officers seized the alleged gambling records from the office of GEO, which was not mentioned at all in the affidavit. Moreover, the testimony shows that apparently GEO was not discussed during the issuance of the warrant.
The scope of a search warrant is limited by the terms of its authorization. Walter v. United States, 447 U.S. 649, 656,100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). "[T]he Fourth Amendment confines an officer executing a search warrant strictly withinthe bounds set by the warrant[.]" Bivens v. Six Unknown NamedAgents, 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004 n. 7,29 L.Ed.2d 619 (1971) (emphasis added).
 "When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity. Obedience to the particularity requirement both in drafting and executing a search warrant is therefore essential to protect against the centuries-old fear of general searches and seizures."
United States v. Heldt, 668 F.2d 1238, 1257 (D.C. Cir. 1981),cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982) (emphasis in original). "Limiting discretion [of the officers executing the warrant] is the requirement that officers' actions be sufficiently circumscribed so that the magistrate issuing the warrant is fully apprised of the scope of the search, and can make the determination that the search in all of its dimensions is based upon probable cause and particular descriptions." UnitedStates v. Hillyard, 677 F.2d 1336, 1339 (9th Cir. 1982). "It is well accepted that the authority to search granted by any warrant is limited to the specific places described in it, and does not extend to additional or different places." United States v.Heldt, 668 F.2d at 1262 (citations omitted). "If a search warrant specifies only a portion of a certain building, then only that portion may be searched." 2 W. LaFave, Search and Seizure § 4.10 (1978).
The facts that the offices of GEO and those of Alabama World Travel are connected by an interior door and that apparently Sadie had ultimate control over both suites do not diminish the applicability of the general principles just cited. In reaching this conclusion, we find extremely helpful the following analysis found in *Page 1375 State v. Cote, 126 N.H. 514, 493 A.2d 1170, 1176-78 (1985) (emphasis added):
 "The constitutional requirement, that warrants describe with particularity the places that may be searched, was a response to the abuses authorized by the writs of assistance before the Revolution. See Boyd v. United States, 116 U.S. 616, 624-25
[6 S.Ct. 524, 528-29, 29 L.Ed. 746] . . . (1886). The constitutional provisions do not, however, explain the degree of precision that is necessary to satisfy the requirement of particularity. Efforts at explanation customarily begin with the statement that `[i]t is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.' State v. Moreau, [113 N.H. 303, at 308, 306 A.2d 764, at 767, quoting Steele v. United States, 267 U.S. 498, 503 [45 S.Ct. 414, 416, 69 L.Ed. 757] (1925)].
 "In practice, this general standard has begotten two lines of cases. First, there are those in which language identifying one dwelling unit has been held to limit the permissible search to that unit alone. For example, in Keiningham v. United States, 287 F.2d 126, 129 (D.C. Cir. 1960), the court of appeals held that a warrant to search a row house identified as 1106 18th Street was not authority to search the house at number 1108, even though the defendant had cut a door through the party wall and was occupying the latter house as well. Similarly, Commonwealth v. Hall, 366 Mass. 790, 799-800, 323 N.E.2d 319, 325-26
(1975), held that the scope of a warrant's authorization to search a second floor apartment occupied by the owner of a building did not extend to a third floor apartment which the owner also used for illegal activity. Although in these cases only one person occupied two separate dwelling units, the results of the cases are best understood as resting on the fact that separate dwelling units are usually occupied by different people. The courts have therefore fashioned a general rule to limit the risk of violating one person's privacy on the authority of a warrant directed against another.
 "The cases in the second series hold that the description in a warrant of a dwelling or commercial unit extends the scope of the warrant to structures and spaces that are exclusively appurtenant to that unit, at least in the absence of any expressly limiting language. . . .
 "Cases have fallen into this second category even when the descriptions have been more precise, and therefore ostensibly more limiting, than those quoted so far. Thus, business premises described as `the entire first floor' have been held to include a balcony room situated at a level higher than the first floor [where that balcony room is reached from the first floor premises rather than from the second floor]. Rainey v. State, 74 Wis.2d 189, 204, 246 N.W.2d 529, 535-36 (1976). A description of `the entire apartment located on the second floor' has carried with it the third floor attic, when the attic had no separate address, was used only by the occupant of the apartment and could be entered only from the apartment. Commonwealth v. Scala, 380 Mass. 500, 509, 404 N.E.2d 83, 89 (1980). And, bearing close analogy with the present case, United States v. Palmisano, 386 F. Supp. 599, 599-600 (E.D.Wis. 1974), held that a description of `a single story brick structure, housing a front tavern area . . . and a back room' extended the right to search to the basement of the building. In the report of the case there is no indication that anyone other than the first floor occupant had access to or used the basement.
 "The common feature of the cases in this second group is that the areas in question were not separate dwelling or commercial units. In such instances, the same person will very probably occupy both the premises as described in the warrant and the secondary areas in question. The privacy interests of others do not, therefore, demand a narrow construction of the warrant's terms. *Page 1376 
 "On the authority of these cases it is fair to say, then, that there are two complementary general rules for interpreting a warrant's description of the place to be searched. As between different dwelling or commercial units, the description is limiting language, but as between a given unit and its own
appurtenant spaces or buildings the description is merely identifying."
On the facts before us, we hold that the description in the affidavit was limiting rather than merely identifying. The facts indicate that GEO is a commercial unit separate from Alabama World Travel, even though both are owned by Sadie; from the facts before us, it cannot be said that GEO is a "secondary area" as to Alabama World Travel or "exclusively appurtenant" to Alabama World Travel. The evidence is that GEO is in a multi-unit commercial building and is clearly demarcated from Alabama World Travel by the separate entrance, which displays an identifying sign. From exterior appearance, GEO is clearly a separate unit; it is not comparable to an attic or basement which is accessible only by the area described in a warrant. Therefore, the officers should have limited their execution of the warrant to Alabama World Travel, as mandated by the warrant and affidavit.
Even if the officers' testimony had revealed facts to support a claim that it was reasonable for them to assume that the two businesses were being used as a single unit, their assumption does not excuse their failure to include GEO in the description, because the premises clearly display external evidence of multiple units. In United States v. Palmer, 505 F. Supp. 812
(M.D.N.C.), rev'd on point not considered by the district court,667 F.2d 1118 (4th Cir. 1981), cert. denied, 464 U.S. 817,104 S.Ct. 76, 78 L.Ed.2d 88 (1983), the court held that a warrant authorizing the search of a carpet store did not allow the search of offices located in the rear of an adjacent business. In so holding, the court rejected the Government's argument that it was "reasonable" for the executing officers to believe that the offices of the adjoining business and the carpet business were being used as a single unit since the telephone located in the adjoining offices was subscribed to the carpet store and the front portion of the adjoining business appeared to have been abandoned. It noted that, by the facts before the officers, which included a general knowledge of the premises described and signs which identified the businesses as separate, the officers had external evidence of multiple occupancy. We find apropos the following observations:
 "[I]t appears that the FBI Agents had ample opportunity to familiarize themselves with the physical configuration of the premises to be searched. It is equally apparent that, having identified the rear offices of Area `B' as the situs of the suspected illegal activity, government agents could have either sought an additional warrant which particularly identified those premises as the area to be searched or included a specific description of the offices in the rear of Area `B' on the warrants actually obtained. In view of the well settled principle that search warrants are to be strictly construed, Keiningham v. United States, 287 F.2d 126
(D.C. Cir. 1960), this Court is constrained to conclude that the search warrant . . . did not authorize the search which was, in fact, conducted."
505 F. Supp. at 820. In People v. Nibur, 113 A.D.2d 957,493 N.Y.S.2d 855 (1985), the court rejected the People's argument that the police had always believed that the area named in the warrant encompassed the area actually searched. Rather, the court held that a warrant authorizing a search of an automotive shop located on the end of a building did not also authorize the search of the defendant's automotive shop located in the middle of the building, where the shops were clearly distinguishable from the outside by their advertising signs and where the affidavit in support of the warrant stated only that the narcotics transaction had taken place in the shop named in the warrant. See also State v. Varvil, 686 S.W.2d 507 (Mo.App. 1985) *Page 1377 
(wherein the court held that a warrant which described one building with particularity did not authorize the search of a second building on the same tract of land even though officers thought the designated business occupied both buildings).
In the instant case, the investigators were, or should have been, aware that GEO is located next door to Alabama World Travel. Moreover, from the reference to GEO by the letter retrieved from the trash, the investigators were or should have been aware of the possibility that GEO has more than a physical connection to Alabama World Travel and that a search of GEO could also be productive. Given these facts, we conclude that the investigators should have better familiarized themselves with the layout of the premises and identified more precisely the situs of the suspected illegal activity. In light of the facts, and given the lack of circumstances excusing the investigators from obtaining a more particular description, a proper description of the area to be searched was neither impossible or impractical.
If, in fact, the investigators by thorough investigation had a suspicion that a search of GEO would be productive, they should have specified the reasons in their affidavit and allowed the judge to determine if their suspicions measured up to the probable cause necessary to support a search of GEO. Clearly, the investigators were not prevented from describing the location to be searched with a further degree of accuracy than that set forth in the affidavit; GEO is a separate, identifiable unit which should have been designated with particularity.
The above discussion is based upon our assumption that the investigators either considered GEO and Alabama World Travel to be a single unit or knew that Sadie's office was in the GEO business.
Finally, we consider the possibility that the officers intended to search Alabama World Travel and, upon entering the business, discovered that a common door offers access to GEO. We find persuasive the following authority. In Keiningham v. UnitedStates, 287 F.2d 126 (2d Cir. 1960), even in a situation where the officers had no reasonable means to discover that two separate units were accessible to each other by a common door, the court held that the search warrant did not encompass the unit not named. There, the police officers obtained a search warrant for 1106 Eighteenth Street, N.W., which is one in a series of row houses, each of which is connected by party walls to the house on either side. While executing the warrant, the officers observed a freshly cut door between 1106 and 1108 Eighteenth Street. After entering the door, the officers searched 1108, where the defendants were conducting a numbers operation. In reversing the convictions, the court stated:
 "The Government contends that, since appellants were using the two houses as a single unit, the search warrant for 1106 should somehow be construed to embrace 1108 as well. It seems to be the Government's theory that 1108 became part of 1106 because of the use to which the two houses were put by appellants. This contention is unsound. We know of no clause in the warrant issued extending the authority granted therein in the event of unforeseen circumstances, and it is well settled that search warrants must be strictly construed. The authority to search is limited to the place described in the warrant and does not include additional or different places."
287 F.2d at 129 (footnote omitted). See also Garrison v. State,303 Md. 385, 494 A.2d 193 (1985), cert. quashed, ___ U.S. ___,106 S.Ct. 1182, 89 L.Ed.2d 299 (1986) (wherein the court held that a search warrant which particularly described one apartment did not authorize search of another apartment, even though a common door afforded access between the two apartments).
Thus, we conclude that the instant search was beyond the authority conferred by the warrant and affidavit. "A search of a place other than as is described in a search warrant is, in effect, a search without a warrant." Finch v. State, *Page 1378 479 So.2d 1314, 1320 (Ala.Cr.App. 1985) (quoting People v. Royse,173 Colo. 254, 256, 477 P.2d 380, 380 (1970)). Accordingly, the search is presumed to be unreasonable. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357,88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted).
 III. APPLICATION OF THE "GOOD FAITH EXCEPTION"
In anticipation of response by the attorney general to our holding, we are inclined to address the question of whether the seized evidence escapes the fate of the exclusionary rule by application of the "good faith exception" enunciated in UnitedStates v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677
(1984), and Massachusetts v. Sheppard, 468 U.S. 981,104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). These cases provide that the exclusionary rule does not operate to exclude evidence seized by a law enforcement officer acting in objectively reasonable reliance on a warrant issued by a neutral and detached magistrate, even though the warrant is later determined to be defective. The holding of Leon and Sheppard is designed to apply to situations in which "an officer acting with objective good faith has obtained a search warrant from a judge or magistrateand acted within its scope." Leon, 468 U.S. at ___,104 S.Ct. at 3420 (emphasis added) (footnote omitted).
 "[I]t is important to understand that Leon does not
hold that the exclusionary rule is totally inapplicable whenever the search or seizure objected to was in some sense incident to a previously issued warrant. The Leon rule has to do with a presumptively invalid warrant, such as one issued on less than probable cause (assumed to be so in Leon) or one issued with an insufficient particularity in description (assumed to be so in Sheppard). Fourth Amendment violations relating to execution of the warrant are unaffected by Leon, as is reflected by the majority's caution that its discussion `assumes, of course, that the officers properly executed the warrant and searched only those places for those objects that it was reasonable to believe were covered by the warrant.' [468 U.S. at ___, 104 S.Ct. at 3419 n. 19]. This means that Leon cannot be invoked in the prosecution's favor on such issues as . . . whether the scope and intensity and duration of the warrant execution were excessive. . . ."
1 W. LaFave, Search and Seizure § 1.2 at 24 (Supp. 1986). Here, the "good-faith exception" is not applicable because the officers clearly acted outside the confines of the description in the affidavit. See, e.g., Garrison v. State, 303 Md. 385,494 A.2d 193 (1985) (search of apartment not described); State v. Varvil,686 S.W.2d 507 (Mo.App. 1985) (search of building which was outside scope of description).
Furthermore, the deficiency of description which resulted in an overbroad search was due to the investigators' failure to obtain and provide the most detailed information possible about the premises for which they were requesting a warrant. In issuing the warrant, the judge was not afforded the opportunity to observe his required judicial role of determining, with particularity, the proper place to be searched. Rather, it was the officers who made the determination of the place to be searched. Where the error does not fall on the issuing magistrate, but rather on the officers, the exception does not apply. Finch v. State,479 So.2d 1314, 1319 (Ala.Cr.App. 1985). "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at ___,104 S.Ct. at 3418 (emphasis added). Hence, the exclusionary rule's application in this instance is fully justified. See, e.g.,United States v. Burke, 613 F. Supp. 576 (N.D.Ga. 1985), rev'd onother grounds, precise *Page 1379 ground not considered, 784 F.2d 1090 (11th Cir. 1986) (wherein the district court held that the "good-faith exception" did not apply to a warrant which was invalid for failing to describe the premises by their proper address, where the error was that of the officer who made the affidavit in support of the warrant).
Finally, the investigators' conduct in this case cannot be viewed as objectively reasonable. In Leon, the Court noted, "The objective standard we adopt . . . requires officers to have a reasonable knowledge of what the law prohibits." Leon, 468 U.S. at ___, 104 S.Ct. 3420 n. 20. Thus, in evaluating the conduct of these officers charged with a reasonable knowledge of the law's requirements, we hold that "it can [only] be said that the law enforcement officer[s] had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at ___,104 S.Ct. at 3419-20 (quoting United States v. Peltier,422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975)). We do not find an objectively reasonable basis for the investigators to have believed that the warrant authorized the search of GEO.
We conclude that, because the description in the warrant was too broad, but the description in the affidavit was too narrow in view of the area searched, the evidence seized during the search of GEO should have been excluded. To hold otherwise would be tantamount to holding that a warrant always gives law enforcement personnel unfettered discretion to determine the scope of the search, irrespective of the requirements of the Fourth Amendment. Therefore, the judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion. We find no need to address any other issues raised by Sadie.
REVERSED AND REMANDED.
All Judges concur.
[1] The prosecutor and defense counsel agreed that the testimony to be considered by the trial court in its consideration of Sadie's motion to suppress would be the testimony heard previously by the district court during its suppression hearing.