936 A.2d 862

**Terrance PARKER**

v.

**STATE of Maryland.**

**No. 37, Sept. Term, 2006.**

Court of Appeals of Maryland.

Dec. 6, 2007.

Raker, J., dissented and filed opinion.

Allison E. Pierce, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for petitioner.

Shannon E. Avery, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, Baltimore), on brief, for respondent.

Argued before BELL, C.J., RAKER,* WILNER,* CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, Judge, Retired, Specially Assigned,

This criminal case concerns the applicability of the exclusionary rule to evidence seized following an alleged violation of the "knock and announce" principle in connection with the execution of a search warrant. In addition, the case presents

---

* Wilner, J., and Cathell, J., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

an issue of whether sufficient evidence supported a conviction for possession of a regulated firearm (a handgun) in violation of Maryland Code (1957, 1996 Repl. Vol, 2001 Supp.), Article 27, § 445(d)(1).[1]

The petitioner, Terrance Parker, argues that both the Fourth Amendment and Maryland law require that seized evidence should have been excluded from his trial because police officers did not knock and announce their presence prior to their search of a house at 800 Belnord Avenue in Baltimore City. Furthermore, he contends that the evidence supporting his handgun conviction was insufficient because the State never established that he had an interest in or resided in the house, or that he had ever been in the proximity of the handgun.

In its brief and oral argument, the State's principal contention is that exclusion of the evidence is inappropriate both under the Fourth Amendment to the United States Constitution and as a matter of Maryland law. Regarding the handgun conviction, the State maintains that the evidence supported a reasonable inference that Parker exercised dominion or control over the handgun.

I.

The basic facts of this case have been undisputed. The case was tried in the Circuit Court for Baltimore City on an agreed statement of facts, and in this Court the parties have agreed upon the facts.

---

1. Former Article 27, § 445(d)(1), has been recodified in Maryland Code (2003, 2006 Supp.), § 5–133(b) of the Public Safety Article. Former § 445(d)(1) provided as follows:

"(d) *Restrictions on possession—In general.*—A person may not possess a regulated firearm if the person:

(1) Has been convicted of:

(I) A crime of violence;

(ii) Any violation classified as a felony in this State;

(iii) Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than 2 years; or

(iv) Any violation classified as a common law offense where the person received a term of imprisonment of more than 2 years."

On December 19, 2002, Baltimore City police officers applied for search warrants, containing so-called "no-knock" provisions, for three residences in Baltimore City. The three residences were near each other; one of them was a two-story, plus a basement, brick row house at 800 Belnord Avenue. One of the police officers, Detective Thomas Jugan, stated, in the affidavit supporting the application, the following concerning the requested "no-knock" provisions:

"[I]t has been the experience of your Affiant and the information supplied from the Confidential Informant that those immersed in the illicit world of illegal narcotics often use firearms. Those weapons are commonly in the form of handguns, rifles, shotguns, Uzi's(sic), etc. and are extensions of their illicit operations. Based on this information and [your] [Affiant's] prior experience, this warrant will be attempted by a *no knock* forced entry to provide a margin of safety. Furthermore, the area is well known for its high violence, where numerous assaults by shooting and homicides have occurred, and also [is] an area where your Affiant's (sic) have executed search and seizure warrants in the past and have recovered numerous firearms."

The warrant, authorizing the search at 800 Belnord Avenue and purporting to authorize a "no-knock" entry, was issued by a judge of the District Court of Maryland. Neither the application nor the affidavit nor the warrant mentioned Terrance Parker by name. Detective Jugan, later at the suppression hearing, testified that he did not know whether Parker lived at the 800 Belnord Avenue residence.

After the warrant was issued, the police officers, without first knocking and announcing their presence, entered the residence. According to the prosecuting attorney at the suppression hearing, "there was a forced entry." Upon entering the house at 800 Belnord Avenue, the police officers found two people, Evania Wilkens, who did reside in the house, and Terrance Parker. The officers detained the two and then searched the house. The search revealed cocaine and marijuana in various places in the basement and on the first floor. The officers also recovered $2100 from above a ceiling tile in

the basement and two nine millimeter live rounds of ammunition from the top of a china closet on the first floor. In addition, they recovered an operable, loaded .357 magnum handgun "[f]rom the second floor hall" and also recovered $1900 from above a ceiling tile in a bedroom. A search of Parker's person produced nine vials of cocaine, three zip lock bags of marijuana, and $77.

Parker was charged in the Circuit Court for Baltimore City with possession of a regulated firearm in violation of former Article 27, § 445(d)(1), possession with intent to distribute a controlled dangerous substance, and various other drug and weapons-related offenses. He moved to suppress the evidence seized as a result of the search. In denying Parker's motion at the conclusion of a suppression hearing, the circuit judge reasoned that there was "sufficient probable cause in the warrant" but was "concerned with . . . the 'no knock' issue." The judge found that there was "not a sufficient factual showing. I don't believe that a 'no knock' warrant was necessary for the Belnord Avenue residence." [2] Nonetheless,

---

2. The Circuit Court stated:

"There's no information given by the confidential informant about the drug dealing going on in this house or about weapons being stored in the house.

"If you look at the part of the warrant that requests the 'no knock,' I mean, basically, you would pretty much have to give a 'no knock' warrant for any house that's located in that area because it's a high crime area and there are shootings in that area. So, even if there's no one in the house, or you're going in for a computer in a sex offense case and you have no specific information that there are weapons in the house, just based on the general—it's a very general statement as to why the officers are requesting a 'no knock' warrant.

"And which residence is it referring to? Is it referring to the main target of their initial investigation where they made several undercover—or they had their informant make several buys from, the 737 North Lakewood Avenue? Is it referring to the address on Kenwood Avenue? Is it referring to the address on Belnord? There's such little information in here on Belnord.

"So, based on the fact that I do not believe that there is sufficient information—there is not a sufficient factual showing. I don't believe that a 'no knock' warrant was necessary for the Belnord Avenue residence. I don't believe that the officers had enough information to request. And, I think, when you're requesting a warrant for separate

relying on the Court of Special Appeals' decision in *Davis v. State*, 144 Md.App. 144, 797 A.2d 84 (2002), which was later reversed by this Court, *Davis and Adams v. State*, 383 Md. 394, 859 A.2d 1112 (2004), the Circuit Court held that the "good faith exception [to the exclusionary rule] does apply and the officers did act in good faith."

Subsequently, after a not guilty plea and a trial upon an agreed statement of facts, Parker was convicted of one count of possessing a regulated firearm and one count of possession with intent to distribute a controlled dangerous substance. On the firearm conviction, Parker was sentenced to five years imprisonment, without parole, pursuant to former Article 27, § 449(e). He was sentenced to a concurrent twelve-year term of imprisonment for the controlled dangerous substance conviction. Parker appealed to the Court of Special Appeals, challenging the sufficiency of the evidence underlying both convictions, arguing that his motion to suppress should have been granted, and contending that the five-year sentence without the possibility of parole for the firearm conviction was illegal.

## II.

At this point, it would be useful to review the legal background and history regarding the "knock and announce" principle, so-called "no-knock" warrants, the exclusionary rule when there is some illegality with respect to a search and a seizure of evidence, and the relationship of such matters to the appellate proceedings in the present case. During the period of time since the search of the residence at 800 Belnord Avenue, there have been significant fluctuations in the United States Supreme Court and Maryland case law concerning these matters. The appellate proceedings in the case at bar have been directly affected by these fluctuations.

---

addresses, you need to specify what your reason is for a 'no knock' warrant for each of the addresses."

A. *The "Knock and Announce" Principle
and "No-knock" Search Warrants*

Chief Judge Bell for this Court extensively reviewed the "knock and announce" principle in *State v. Lee,* 374 Md. 275, 821 A.2d 922 (2003), tracing its common law origins, pointing out that it is a settled rule of Maryland common law, and discussing the Supreme Court's holding in *Wilson v. Arkansas,* 514 U.S. 927, 929, 115 S.Ct. 1914, 1915, 131 L.Ed.2d 976, 979 (1995), "that this common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment."

The *State v. Lee* opinion, 374 Md. at 284 n. 7, 821 A.2d at 927 n. 7, quoted from *Semayne's Case,* 5 Coke's Reports 91, 77 Eng. Rep. 194, 195–196 (K.B.1603), the leading English common law decision delineating the "knock and announce" principle when an officer seeks to arrest a person in a residence or to search a residence:

> "In all cases where the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it he ought to signify the cause of his coming, and to make request to open doors . . ., for the law without a default in the owner abhors the destruction or breaking of any house (which is for the habitation and safety of man) by which great damage and inconvenience might ensue to the party, when no default is in him; for perhaps he did not know of the process, or which, if he had notice, it is to be presumed that he would obey it."

*See also, e.g., Wilson v. Arkansas, supra,* 514 U.S. at 931–933, 115 S.Ct. at 1916–1917, 131 L.Ed.2d at 980–981 (reviewing other early English cases and treatises, and tracing the origins of the principle to a statute enacted in 1275); *Miller v. United States,* 357 U.S. 301, 306–308, 78 S.Ct. 1190, 1194–1195, 2 L.Ed.2d 1332, 1337–1338 (1958) (also reviewing the early authorities, including a reported decision during the reign of Edward IV, 1461–1483); *Henson v. State,* 236 Md. 518, 522,

204 A.2d 516, 519 (1964) (where Judge Hammond for the Court, quoting some of the early decisions, stated that " 'the law abhors unnecessary breaking or destruction of any house,' " and that " 'the dweller in the house would not know the purpose of the person breaking in, unless he were notified, and would have a right to resist seeming aggression on his private property' "); Irma S. Raker, *The New "No–Knock" Provision and Its Effect on The Authority of the Police to Break and Enter*, 20 Am. U.L.Rev. 467 (1970–1971) (discussing the common law development of the principle and the earlier cases in this country).[3]

The "knock and announce" principle was recognized as part of federal case and statutory law before the Supreme Court held that it was also a requirement of the Fourth Amendment. In *Miller v. United States, supra,* 357 U.S. at 308–315, 78 S.Ct. at 1195–1198, 2 L.Ed.2d at 1337–1340, the Supreme Court held that, under a federal statute and District of Columbia case law, the warrantless arrest of the petitioner in his District of Columbia apartment, and the search incident to the arrest, were "unlawful because the officers broke the door of petitioner's home without first giving notice of their authority and purpose in demanding admission." *Miller,* 357 U.S. at 305, 78 S.Ct. at 1193, 2 L.Ed.2d at 1336. The Court concluded that "the evidence seized should have been suppressed." 357 U.S. at 314, 78 S.Ct. at 1198, 2 L.Ed.2d at 1341. *See Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), which also involved the federal "knock and announce" statute.

*Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), involved a "no-knock" entry into the petitioners' apartment by local California police officers, who believed that the petitioners were selling marijuana from the apartment. Except for a short opening part of Justice Clark's opinion in *Ker,* in which eight of the nine justices reaffirmed their adherence

---

**3.** The reference to a "New No–Knock" provision in the title of Judge Raker's Comment was to a recently enacted District of Columbia statute.

to *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), there was no opinion of the Court.[4] Despite the absence of an opinion of the Court, however, both the plurality opinion of four justices and the dissenting opinion of four justices seemed to agree that police officers' method of entry and the "knock and announce" principle were pertinent in determining whether a search and seizure violated the Fourth Amendment. *See Ker,* 374 U.S. at 38, 46–47, 83 S.Ct. at 1632, 1636, 10 L.Ed.2d at 741, 746. The *Ker* plurality opinion, 374 U.S. at 40, 83 S.Ct. at 1633, 10 L.Ed.2d at 742, held that the police officers' failure to knock or announce their presence before entering the apartment did not violate the Fourth Amendment because of "the officers' belief that Ker was in possession of narcotics which could be quickly and easily destroyed," coupled with "Ker's furtive conduct in eluding them" at an earlier time.

*Henson v. State, supra,* 236 Md. 518, 204 A.2d 516, decided about 1½ years after *Ker v. California,* upheld, under both Maryland common law and federal constitutional law, a "no-knock" entry pursuant to a valid search warrant. In *Henson,* police officers, with probable cause to believe that the appellant was selling narcotics from his residence, obtained a search warrant for the residence, forcibly entered the house unannounced, found quantities of heroin, and arrested the appellant Henson. After his conviction of two narcotics felonies, Henson appealed, and this Court affirmed. The Court, after reviewing English common law authorities, as well as earlier Maryland cases,[5] held, as a matter of Maryland law, that a common law exception to the "knock and announce" principle was applicable under the circumstances. Judge Hammond for

---

4. Justice Harlan, concurring in the result only, *Ker,* 374 U.S. at 44–46, 83 S.Ct. at 1645–1646, 10 L.Ed.2d at 744–745, reiterated his view that Fourth Amendment requirements should not be applied to state searches and seizures.

5. *See Frankel v. State,* 178 Md. 553, 561, 16 A.2d 93, 97 (1940); *Goodman v. State,* 178 Md. 1, 8, 11 A.2d 635, 639 (1940).

the Court initially stated (236 Md. at 521–523, 204 A.2d at 518–519):

"The claim that the evidence seized was inadmissible because the police officers executing the search warrant did not advise those within that they had such a warrant and demand admittance, but broke in forcibly without notice, is an extension of the old rule that a peace officer seeking to arrest an individual who is in a house, either by authority of an arrest warrant or under circumstances making a warrant unnecessary, must give proper notice of his purpose and authority and be denied admittance before he can use force to break and enter. * * * However, the rule often has been made subject to qualifications and exceptions .... "

The *Henson* opinion next pointed out that a "similar rule as to the execution of a search warrant has often been stated [by] this Court...." (*Ibid.*). Judge Hammond continued (*Henson,* 236 Md. at 522–523, 204 A.2d at 519):

"Yet, as in the similar arrest cases, similar exceptions and qualifications have regularly been engrafted on the general rule whether it be imposed by common law or a statute (which often is declaratory of the common law). If the exigencies and practicalities of the situation demand entry without prior notice and demand, force may be used to break and enter under authority of a valid search warrant. Practicalities and exigencies in searches for narcotics require the element of surprise entry, for if opportunity is given all evidence easily may be destroyed during the time required to give notice, demand admittance and accept communication of denial of entry."

The Court concluded its Maryland common law discussion as follows (236 Md. at 524, 204 A.2d at 520):

"We hold that in the case before us the actions of the police in breaking into the premises without warning were reasonable, permissible and legal and the evidence seized was admissible against the appellant."

The *Henson* opinion then turned to "binding federal constitutional safeguards," and, relying upon *Ker v. California,* held

that the "no-knock" entry did not violate the Fourth Amendment. *Ibid.*

As previously indicated, *Wilson v. Arkansas, supra,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976, decided in 1995, is particularly important because it is the first time that an opinion of the Supreme Court (contrasted with plurality and dissenting opinions) held that the "knock and announce" principle formed a part of the reasonableness inquiry under the Fourth Amendment. In upholding a "no-knock" entry, the search of the petitioner's home, and his narcotics conviction, the Arkansas Supreme Court had held that the "knock and announce" principle was not embodied in the Fourth Amendment. The United States Supreme Court reversed on the ground that the "knock and announce" principle was part of the reasonableness inquiry under the Fourth Amendment, although the Court further held that "no-knock" entries were sometimes permissible. The United States Supreme Court did not rule upon the State's arguments that the "no-knock" entry into the petitioner's home was constitutional because there had been evidence that the petitioner had earlier threatened someone with a firearm or because of a risk that the narcotics would be destroyed. Instead, the case was remanded to the Arkansas Supreme Court for that court to decide these issues. Moreover, the United States Supreme Court in *Wilson* noted, but did not rule upon, the argument by the State and *amici* "that exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement." *Wilson,* 514 U.S. at 937 n. 4, 115 S.Ct. at 1919 n. 4, 131 L.Ed.2d at 984 n. 4. While purporting not to decide the issue, the reversal and remand to the Supreme Court of Arkansas was obviously premised upon the Fourth Amendment's exclusionary rule being applicable. Like several other Supreme Court "knock and announce" cases, *Wilson* was a criminal case, and the only issue was whether the Fourth Amendment required the exclusion of the evidence seized during the search.

About two years after *Wilson,* the United State Supreme Court rejected the holding by the Wisconsin Supreme Court

"that police officers are *never* required [by the Fourth Amendment] to knock and announce their presence when executing a search warrant in a felony drug investigation." *Richards v. Wisconsin,* 520 U.S. 385, 387–388, 117 S.Ct. 1416, 1418, 137 L.Ed.2d 615, 620 (1997) (emphasis in original). The Court in *Richards,* 520 U.S. at 390 n. 1, 117 S.Ct. at 1420 n. 1, 137 L.Ed.2d at 622 n. 1, specifically citing *Henson v. State, supra,* 236 Md. at 523–524, 204 A.2d at 519–520, also disagreed with the apparently similar Fourth Amendment holding in *Henson.*[6] Instead, the *Richards* opinion enunciated the following Fourth Amendment principle (520 U.S. at 394, 117 S.Ct. at 1421–1422, 137 L.Ed.2d at 624):

"Thus, the fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.

"In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."

The United States Supreme Court in *Richards,* however, affirmed the petitioner's convictions and the denial of his motion to suppress evidence, holding that, under the facts of the case, the "no-knock" forcible entry was reasonable and, for this reason, the evidence should not have been suppressed.

---

6. In addition, *see State v. Lee,* 374 Md. 275, 289 n. 9, 821 A.2d 922, 930 n. 9 (2003), pointing out that, under the *Richards* opinion, the Fourth Amendment holding in *Henson,* "to the extent that *Henson* sanctioned a *per se* rule in drug cases, ... is no longer good law." *See also Davis and Adams v. State,* 383 Md. 394, 413 n. 13, 859 A.2d 1112, 1123 n. 13 (2004).

*See also United States v. Banks,* 540 U.S. 31, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) (The Court applied the principles of *Richards* to hold that exigent circumstances justified the "no-knock" entry and that, therefore, the evidence was admissible. The Court also held that the standards under the Fourth Amendment and the federal "knock and announce" statute were the same); *United States v. Ramirez,* 523 U.S. 65, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (to the same effect as the *Banks* case).

A more detailed analysis of the *Richards* and *Wilson* opinions, as well as other cases applying the Fourth Amendment's exclusionary rule to evidence seized in violation of the "knock and announce" principle, can be found in *State v. Lee, supra,* Md. 275, 374 Md. 275, 821 A.2d 922. The *Lee* opinion also discussed the Maryland "knock and announce" cases. This Court held in *Lee* that neither the inevitable discovery nor the related independent source exceptions to the exclusionary rule were applicable to allow the admission of evidence seized during a search conducted in violation of "knock and announce" requirements.

B. *Recent "Knock and Announce" Decisions and the Appellate Proceedings in the Instant Case*

In 2002, about one year prior to this Court's opinion in *State v. Lee, supra,* the Court of Special Appeals rendered its opinion in *Davis v. State, supra,* 144 Md.App. 144, 797 A.2d 84. The Court of Special Appeals in *Davis* took the position that the specific holding in *Richards v. Wisconsin, supra,* was limited to the situation where the police officers "did not have no-knock authorization in the search warrant" (144 Md.App. at 154, 797 A.2d at 90). The intermediate appellate court's *Davis* opinion went on to hold that, when the police officer's affidavit, submitted with the application for a warrant, contains sufficient facts to establish a reasonable suspicion of exigent circumstances, and the warrant authorizes a "no-knock" entry, a "no-knock" entry into the premises is permissible under the Fourth Amendment and *Richards v. Wisconsin.* The Court of Special Appeals' *Davis* opinion alternatively held that, even

if the affidavit does not show exigent circumstances, if the "no-knock" authorization is contained in the warrant, "the good faith exception to the exclusionary rule" is applicable (144 Md.App. at 158, 797 A.2d at 93). As earlier indicated, the Circuit Court in the case at bar applied the Court of Special Appeals' alternative *Davis* holding in denying Parker's motion to suppress.

While the appeal in the present case was pending in the Court of Special Appeals, but before briefing and argument in the intermediate appellate court, this Court in *Davis and Adams v. State, supra,* 383 Md. 394, 859 A.2d 1112, reversed the Court of Special Appeals' decision in *Davis v. State, supra,* 144 Md.App. 144, 797 A.2d 84. Our *Davis and Adams* opinion, 383 Md. at 409, 859 A.2d at 1121, initially stated "that Maryland does not statutorily authorize its judicial officers to issue 'no-knock' warrants" and that "it does not have a 'knock and announce' statute." The opinion in *Davis and Adams,* 383 Md. at 408, 859 A.2d at 1120, also pointed out that Article 26 of the Maryland Declaration of Rights is "[i]nterpreted as generally *in pari materia* with the Fourth Amendment" and "has a like, though not identical, purpose...."[7] This Court's *Davis and Adams* opinion, 383 Md. at 410–412, 859 A.2d at 1122, went on to rely on both earlier Maryland common law "knock and announce" cases as well as Fourth Amendment decisions.

After noting that cases in other jurisdictions are divided as to whether magistrates may issue "no-knock" warrants in the absence of statutory authority, the Court in *Davis and Adams* held as follows (383 Md. at 427–428, 859 A.2d at 1132):

---

7. Article 26 of the Maryland Declaration of Rights provides as follows:
 "**Article 26. Warrants.**
 That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

"We hold that a judicial officer in Maryland, under current Maryland law, may not issue a 'no-knock' warrant. Rather, the propriety of a 'no-knock' entry will be reviewed and determined on the basis of the facts known to the officers at the time of entry, rather than at the time of the application for the warrant."

In light of the holdings that "no-knock" warrants "are not authorized under Maryland law and [that] exigency must be determined at the time of the entry," this Court had no need to "decide the applicability of the good faith exception to 'no-knock' warrants." *Davis and Adams,* 383 Md. at 437–438, 859 A.2d at 1137–1138. The Court in *Davis and Adams,* 383 Md. at 433, 859 A.2d at 1125, decided "that the entry in this case was not justified by existing and articulated exigency," and the judgments below were reversed. *See also State v. Carroll,* 383 Md. 438, 859 A.2d 1138 (2004), reaffirming the holdings in *Davis and Adams,* although deciding that the police officers' "no-knock" entry was reasonable under the facts of the *Carroll* case.

Turning to the case at bar, the petitioner Parker argued in the Court of Special Appeals, *inter alia,* that the Circuit Court's reliance upon the "good faith exception" for "no-knock" warrants, delineated in the Court of Special Appeals' *Davis* opinion, was erroneous in light of this Court's opinion in *Davis and Adams.* Parker contended that, at the time the police officers entered the residence at 800 Belnord Avenue, there existed no exigent circumstances justifying the "no-knock" forcible entry and that, therefore, the entry and search were unreasonable. Consequently, Parker's argument continued, the Circuit Court erred in denying the motion to suppress. Parker relied upon the Fourth Amendment, Article 26 of the Maryland Declaration of Rights, and Maryland case law. Parker also argued that the warrant authorizing the search at 800 Belnord Avenue was not supported by probable cause, that the evidence was insufficient to support either conviction, and that the sentence imposed for the firearm conviction was illegal. The State's only argument with respect to the "knock and announce" matter was that exigent circum-

stances, at the time of entry, justified the forcible "no-knock" entry, and, consequently, both the entry and the search were reasonable. For this reason, according to the State, the motion to suppress was properly denied.

The Court of Special Appeals, in an unreported opinion, did not accept either Parker's argument or the State's argument. Moreover, the Court of Special Appeals reiterated the view expressed in its earlier *Davis v. State* opinion, 144 Md.App. at 155, 797 A.2d at 91, that the "good faith exception" is pertinent and "must be addressed under these circumstances." The Court of Special Appeals, purportedly based on this Court's *Davis and Adams* and *Carroll* opinions, vacated the Circuit Court's judgments and remanded the case

> "for the Circuit Court to decide in the first instance (1) whether the specific facts known to the officers at the moment they entered 800 Belnord Avenue—including whatever facts came to their attention between the time when they obtained the warrant and the time of their entry— justified a 'no-knock' entry into that residence; and, if the answer to this question is 'no,' (2) whether, in light of the *Davis* and *Carroll* opinions filed by the Court of Appeals on October 21, 2004, the evidence seized is nonetheless admissible under the 'good faith' exception to the exclusionary rule."

As to the other issues, the Court of Special Appeals held that there was probable cause for the issuance of the search warrant, that the evidence supporting the convictions was sufficient, and that Parker should not have been sentenced under former Article 27, § 449(e), for the firearm conviction. *See Stanley v. State,* 390 Md. 175, 887 A.2d 1078 (2005).

On May 12, 2006, Parker filed in this Court a timely petition for a writ of certiorari, presenting three issues. First, Parker challenged the Court of Special Appeals' directives that, after a remand, the Circuit Court should conduct a new suppression hearing to determine whether the facts justified the "no-knock" entry and, even if a "no-knock" entry was unjustified, determine whether the "good faith" exception was applicable.

Parker, relying on this Court's opinion in *Davis and Adams v. State,* contended that the validity of the "no-knock" entry should be determined by the present record, that the record showed no justification for a "no-knock" forcible entry, and that the "good faith" exception does not apply where, at the time, "no-knock" warrants were not authorized by Maryland law. Parker's second question presented was similar to the first, namely whether the "no-knock" entry in the present case violated either the Fourth Amendment or Maryland law, and thus whether the evidence should have been suppressed. Parker's third question was whether sufficient evidence supported the firearm conviction.

The State did not file a cross-petition for a writ of certiorari. Instead, on May 26, 2006, the State filed an answer arguing that the Court of Special Appeals' judgment was correct and that further review by this Court was unwarranted. This Court, on June 14, 2006, granted Parker's certiorari petition, *Terrance Parker v. State,* 393 Md. 245, 900 A.2d 751 (2006). Our order granting certiorari neither added issues to Parker's certiorari petition nor deleted any issue set forth in Parker's petition. The day after Parker's certiorari petition was granted, on June 15, 2006, the United States Supreme Court decided *Hudson v. Michigan,* 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), holding that the Fourth Amendment's exclusionary rule was inapplicable to "knock and announce" violations.

In his brief and argument before this Court, Parker contends that, in deciding whether the evidence should be suppressed under the Fourth Amendment's exclusionary rule, it would be "unfair" to apply *Hudson v. Michigan.* (Petitioner's brief at 29). Parker's principal argument, however, is that the "knock and announce" rule is embodied in Article 26 of the Maryland Declaration of Rights and is also part of Maryland common law, that the "officers' 'no-knock' entry violated ... Article 26 and Maryland common law," and that "exclusion is the appropriate remedy for evidence obtained as the result of an entry made in violation of the knock and announce requirements of Article 26 and Maryland common law." (*Id.* at 19,

31). Parker primarily relies upon this Court's opinion in *Davis and Adams v. State* which, he argues, is legally and factually directly on point. As previously mentioned, Parker also contends that the evidence underlying his firearm conviction was insufficient.

The State, in its brief and oral argument, contends that *Hudson v. Michigan* is dispositive of the Fourth Amendment issue, and that, "[r]egardless of whether there was a Fourth Amendment violation in the manner of entry in this case, the drug and weapons evidence . . . subsequently recovered in the search is not subject to suppression under *Hudson.*" (State's brief at 17–18). With respect to Maryland law, the State relies on our holdings that Article 26 of the Maryland Declaration of Rights, as well as the "knock and announce" principle of Maryland common law, are *in pari materia* with the Fourth Amendment and should be construed and applied consistently with *Hudson v. Michigan.* According to the State, "if a violation of the Fourth Amendment does not automatically require the suppression of evidence, a violation of Article 26 of the Maryland Declaration of Rights similarly does not necessitate suppression." (*Id.* at 21). The State alternatively suggests that "there is no applicable exclusionary rule in Maryland that would be available as a remedy for Parker," citing *Fitzgerald v. State,* 384 Md. 484, 864 A.2d 1006 (2004). (*Id.* at 22). Finally, the State argues that, if *Davis and Adams v. State* and *State v. Carroll* are controlling with regard to Maryland law, the Court of Special Appeals' remand to the Circuit Court

"is appropriate for the suppression court to reexamine [the] evidence in light of *Davis* and *Carroll* in order to determine if the 'no-knock' entry at issue in this case was both reasonable and necessary under the existing and articulated exigent circumstances and facts known to the executing officers at the time of entry." (*Id.* at 32).

As earlier indicated, the State also contends that Parker's firearm conviction was supported by sufficient evidence.

There is one further development concerning the "knock and announce" principle which should be mentioned. At its 2005 legislative session, the Maryland General Assembly enacted Ch. 560 of the Acts of 2005, effective October 1, 2005, codified in Maryland Code (2001, 2006 Supp.), § 1–203(a)(2)(ii) and § 1–203(a)(3)(iii) of the Criminal Procedure Article. Ch. 560 provided as follows:

"(II) AN APPLICATION FOR A SEARCH WARRANT MAY CONTAIN A REQUEST THAT THE SEARCH WARRANT AUTHORIZE THE EXECUTING LAW ENFORCEMENT OFFICER TO ENTER THE BUILDING, APARTMENT, PREMISES, PLACE OR THING TO BE SEARCHED WITHOUT GIVING NOTICE OF THE OFFICER'S AUTHORITY OR PURPOSE, ON THE GROUNDS THAT THERE IS REASONABLE SUSPICION TO BELIEVE THAT, WITHOUT THE AUTHORIZATION:

1. THE PROPERTY SUBJECT TO SEIZURE MAY BE DESTROYED, DISPOSED OF, OR SECRETED; OR

2. THE LIFE OR SAFETY OF THE EXECUTING OFFICER OR ANOTHER PERSON MAY BE ENDANGERED.

\* \* \*

"(III) IF WARRANTED BY APPLICATION AS DESCRIBED IN PARAGRAPH (2) OF THIS SUBSECTION, AUTHORIZE THE EXECUTING LAW ENFORCEMENT OFFICER TO ENTER THE BUILDING, APARTMENT, PREMISES, PLACE OR THING TO BE SEARCHED WITHOUT GIVING NOTICE OF THE OFFICER'S AUTHORITY OR PURPOSE."

Section 2 of Ch. 560 expressly stated:

"SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any application for a search warrant made before the effective date of this Act."

The Department of Legislative Services' Fiscal and Policy Note on House Bill 577 of the 2005 legislative session, which became Ch. 560, discussed in detail our decisions in *Davis and Adams v. State* and *State v. Carroll* as forming the background for the bill.

## C. *The Exclusionary Rule—Maryland Law*

This Court has in recent years discussed the rule excluding evidence resulting from an illegal search and its history under Maryland law. *See* Judge Raker's opinion for the Court in *Fitzgerald v. State, supra,* 384 Md. at 506–512, 864 A.2d at 1019–1023, and Judge Rodowsky's opinion for the Court in *Chu v. Anne Arundel County,* 311 Md. 673, 537 A.2d 250 (1988). *See also, e.g., Kostelec v. State,* 348 Md. 230, 235–243, 703 A.2d 160, 162–166 (1997); *Sheetz v. City of Baltimore,* 315 Md. 208, 212–217, 553 A.2d 1281, 1283–1285 (1989); *Chase v. State,* 309 Md. 224, 243–256, 522 A.2d 1348, 1357–1364 (1987); *Givner v. State,* 210 Md. 484, 492–499, 124 A.2d 764, 768–772 (1956). Nonetheless, before responding to the parties' arguments, another review of the exclusionary rule under Maryland law would be useful.

The United States Supreme Court in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), held that the Fourth Amendment incorporated an exclusionary rule. At the time, however, the Court had not held that the Fourth Amendment was applicable in state proceedings. Nonetheless, many state supreme courts after *Weeks* held that state constitutional provisions similar to the Fourth Amendment also incorporated exclusionary rules. *See Fitzgerald v. State, supra,* 384 Md. at 508, 864 A.2d at 1020 ("Now, forty-six states have an exclusionary rule for their state constitutions").

The question of whether this Court would follow *Weeks v. United States, supra,* under the Maryland Constitution, arose in *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190 (1928), where the defendant was convicted of a misdemeanor violation of the liquor laws, and the prosecution's evidence introduced at his trial was the product of an illegal search and seizure. This Court, in a 4–3 decision, declined to follow

*Weeks,* holding that, despite the illegality of the search and seizure, "the liquor so seized was admissible in evidence," *Meisinger,* 155 Md. at 199, 141 A. at 538. Chief Judge Bond, Judge W. Mitchell Digges, and Judge Parke dissented, setting forth various reasons for their position that the *Weeks* principle should be followed under the Maryland Constitution.

At the next session of the Maryland General Assembly, the legislators expressed some disagreement with the policy underlying *Meisinger.* The General Assembly enacted Ch. 194 of the Acts of 1929, known as the Bouse Act, which adopted an exclusionary rule for misdemeanors but not for felonies.

The next significant developments were the Supreme Court's decisions in *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), and *Mapp v. Ohio, supra,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. *Wolf v. Colorado* held that, by virtue of the Fourteenth Amendment, the Fourth Amendment was applicable to the states; *Wolf* further held, however, that the Fourth Amendment's exclusionary rule was inapplicable in state proceedings. *Mapp v. Ohio* overruled *Wolf v. Colorado's* exclusionary rule holding and held that the Fourth Amendment's exclusionary rule was applicable to state criminal prosecutions.

In 1973, as an initial part of the project to revise the Maryland Code, the Revisor of the statutory provisions submitted to the General Assembly a proposed "Courts and Judicial Proceedings Article." The proposed statute repealed the Bouse Act because, in the view of the Revisor at that time, the Bouse Act was "unconstitutional" under *Mapp v. Ohio.* The Revisor's then view was erroneous, as the Bouse Act, to the extent that it required the exclusion of evidence, was entirely consistent with *Mapp v. Ohio.* Simply because a state law provision conferring rights upon individuals, or restrictions upon government, does not in some respects go as far as a similar federal constitutional provision, does not mean that the state law provision is invalid. On the contrary, the individual is entitled to the rights, and the state government has the obligations, conferred by each provision. Neverthe-

less, the General Assembly presumably accepted the Revisor's position, and the Bouse Act was repealed, effective January 1, 1974, by the statute enacting the Courts and Judicial Proceedings Article. *See* Ch. 2 of the Acts of the First Special Session of 1973, General Revisor's Note, Laws of Maryland, First Special Session of 1973, at 332.

This Court has not, since *Meisinger*, and the enactment and later repeal of the Bouse Act, decided generally whether Maryland constitutional and/or common law recognizes an exclusionary rule for evidence resulting from an illegal search and seizure. Nonetheless, this Court has adopted, as a matter of Maryland common law, an exclusionary rule in certain specific situations. We have also declined to adopt an exclusionary rule in certain other specific situations.

Thus, in *Chase v. State, supra,* 309 Md. at 253, 522 A.2d at 1362, this Court held that, with regard to the admission of illegally seized evidence in probation revocation proceedings, even though the exclusionary rule was ordinarily inapplicable, "when the officer has acted in bad faith and not as a reasonable officer would and should act in similar circumstances, the evidence should, in any event, be suppressed." This Maryland evidence law holding was based on fairness and the need to deter improper conduct by government officials. Similarly, in *Sheetz v. Mayor and City Council of Baltimore, supra,* 315 Md. at 215, 553 A.2d at 1284, while stating that the exclusionary rule was usually not applicable in civil administrative employee discharge proceedings, this Court, as a matter of Maryland common law, "[was] unwilling to hold that such [illegally seized] evidence is always admissible." The Court continued (*Sheetz,* 315 Md. at 215–216, 553 A.2d at 1284–1285):

"Although discharge proceedings are not usually designed to be punitive and therefore do not fall within the scope of primary police interest, they may be manipulated to serve punishment purposes. In this context, the police deterrence gained from barring the admission of illegally obtained evidence is needed. We therefore hold that such evidence is inadmissible in civil administrative discharge proceedings where the defendant establishes that the police were im-

properly motivated to illegally seize evidence to benefit civil proceedings. *See generally Chase,* 309 Md. at 256, 522 A.2d at 1364 . . . ."

The Court in *Sheetz* directed that the proceedings be remanded for a new administrative hearing at which it would be determined whether the police acted in good faith and, therefore, whether the evidence was admissible. *See also MVA v. Richards,* 356 Md. 356, 377–378, 739 A.2d 58, 70–71 (1999) (pointing out that a "bad faith" exclusionary rule was incorporated in regulations governing administrative driver's license suspension proceedings).

In *Chu v. Anne Arundel County, supra,* 311 Md. 673, 537 A.2d 250, this Court held that the exclusionary rule did not apply in a *civil* action, authorized by former Maryland Code (1957, 1982 Repl.Vol., 1987 Supp.), Art. 27, § 551(a), for the return of property taken under a search warrant. The Court noted, however, that it did "not intimate . . . as to whether an exclusionary rule might operate under Maryland law in [other] contexts," *Chu,* 311 Md. at 679 n. 2, 537 A.2d at 253 n. 2. On the other hand, *Kostelec v. State, supra,* 348 Md. 230, 703 A.2d 160, was a criminal prosecution where evidence seized in violation of former Art. 27, § 551, was admitted at trial, and the conviction was affirmed by the Court of Special Appeals. This Court reversed, holding that, under Maryland law, "the motion to suppress should be granted," *Kostelec,* 348 Md. at 243, 703 A.2d at 166. We refused to consider the State's argument, made for the first time in its brief in this Court, that, under Maryland law, there is no exclusionary rule for violations of former Art. 27, § 551. The *Kostelec* opinion reasoned that the premise of the defendant's argument and the Court of Special Appeals' opinion was that an exclusionary rule was operable for violations of Art. 27, § 551, and that "the State did not attempt to raise by conditional cross-petition for certiorari the issue that there was no suppression remedy for a violation limited to noncompliance with § 551(a)." *Kostelec,* 348 Md. at 242, 703 A.2d at 166.

In addition to the above-cited cases which addressed the issue of an exclusionary rule under Maryland law, there have

been numerous cases in which this Court, without any extensive discussion of the issue, has held that evidence should be excluded under both the Fourth Amendment and under either Article 26 of the Declaration of Rights or Maryland common law. *See, e.g., Gadson v. State,* 341 Md. 1, 21, 668 A.2d 22, 32 (1995); *Garrison v. State,* 303 Md. 385, 494 A.2d 193 (1985), *reversed sub nom. Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *Liichow v. State,* 288 Md. 502, 515, 419 A.2d 1041, 1048 (1980). *See also Gahan v. State,* 290 Md. 310, 319–322, 430 A.2d 49, 53–55 (1981) (Although the evidence was deemed admissible, a premise of the Court's opinion was that an exclusionary rule is applicable for violations of Article 26); *Henson v. State, supra,* 236 Md. at 524, 204 A.2d at 520.

Finally, in one situation where the Fourth Amendment's exclusionary rule was inapplicable, this Court declined to decide whether Maryland law generally recognizes an exclusionary rule for violations of Article 26 of the Declaration of Rights. Instead, we proceeded upon an assumption, *arguendo,* that there is a Maryland exclusionary rule. Since the two constitutional provisions are generally *in pari materia,* we held that, under the circumstances of the particular case then before us, we would apply Article 26 in the same manner as the Fourth Amendment and hold that the evidence was admissible. *See Fitzgerald v. State, supra,* 384 Md. at 506–512, 864 A.2d at 1019–1023.

## III.

In arguing that, as a matter of *federal* law, the *Hudson v. Michigan* Fourth Amendment holding is applicable to the present case, the State's contention is as follows (State's brief at 19):

"With regard to new precedent issued while related cases are pending, the Supreme Court determined that a new rule for the conduct of criminal prosecutions is applied retroactively to all cases, State or federal, pending on direct review or not yet final. *Griffith v. Kentucky,* 479 U.S. 314, 327

[,107 S.Ct. 708, 715, 93 L.Ed.2d 649, 661] (1987). This Court has also followed the general rule for its own rulings that 'a new interpretation of a constitutional provision, statute, or rule has included the case before us and all other pending cases where the relevant question has been preserved for appellate review.' *Polakoff v. Turner*, 385 Md. 467, 487–88[, 869 A.2d 837, 850] (2005)."

As shown by the above quotation, however, the principle relied on by the State is applicable " 'where the relevant question has been preserved for appellate review.' " In both *Griffith* and *Polakoff*, the relevant questions had been raised throughout the litigation. In the case at bar, on the other hand, the applicability of the federal exclusionary rule, where there was a Fourth Amendment violation based on the "knock and announce" principle, was not raised until the State's brief in this Court. At trial and in the Court of Special Appeals, the State's federal law argument was that there was no violation of the Fourth Amendment and that, for this reason, the evidence should not be suppressed. In response to the certiorari petition, the State's position was that the Court of Special Appeals correctly vacated the Circuit Court's judgments and correctly remanded the case for a new suppression hearing. The Court of Special Appeals' decision was obviously premised upon the applicability of an exclusionary rule. If there is no exclusionary rule, there is no reason for a new suppression hearing.

Moreover, in *Griffith v. Kentucky, supra*, the "new rule" that was "applied retroactively" was a new rule which favored the defendant, not the state. *See also Powell v. Nevada*, 511 U.S. 79, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994). *Cf. Williams v. State*, 292 Md. 201, 217, 438 A.2d 1301, 1309 (1981) ("[P]articularly in criminal cases, changes in the ... law ordinarily should have only prospective effect when considerations of fairness are present"); *Lewis v. State*, 285 Md. 705, 713, 404 A.2d 1073, 1078 (1979) ("Although it might not violate constitutional requirements to now modify the ... rule and apply such change retroactively to validate the defendant's ... trial, to do

so may, in our view, impinge upon basic fairness"). *See also Jones v. State,* 302 Md. 153, 161, 486 A.2d 184, 188–189 (1985).

It is true that several federal court appellate cases have utilized the holding of *Hudson v. Michigan* to *affirm* criminal cases, pending on direct appeal when *Hudson* was decided, even though the applicability of the exclusionary rule to alleged "knock and announce" violations was apparently not raised in the trial courts. *See United States v. Acosta,* 502 F.3d 54 (2nd Cir.2007); *United States v. Pelletier,* 469 F.3d 194 (1st Cir.2006); *United States v. Southerland,* 466 F.3d 1083 (D.C.Cir.2006); *United States v. Brown,* 189 Fed.Appx. 722 (10th Cir.2006). *See also, Gahan v. State, supra,* 290 Md. 310, 430 A.2d 49 (a search and seizure case which was not decided by the intermediate appellate court and this Court *affirmed the* trial court based upon a recent Supreme Court Fourth Amendment decision overruling a prior Supreme Court decision). These decisions, however, appear to be simply applications of the well-settled rule of appellate procedure that, on *direct appeal,* an appellate court will ordinarily *affirm* on any ground adequately shown by the record. *See, e.g., Securities and Exchange Com. v. Chenery,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626, 633 (1943); *Frederick v. Pickett,* 392 Md. 411, 424–425, 897 A.2d 228, 235–236 (2006); *Police Patrol Security Systems, Inc. v. Prince George's County,* 378 Md. 702, 716, 838 A.2d 1191, 1199 (2003); *Dorsey v. Bethel A.M.E.,* 375 Md. 59, 68–69, 825 A.2d 388, 393 (2003), and cases there collected.

The rule, permitting an affirmance on any ground adequately shown by the record, would also be applicable where an intermediate appellate court affirms and the appellee, here the State, "raise[s] the ... question in a conditional cross-petition [for certiorari] and we granted the cross-petition." *Robeson v. State,* 285 Md. 498, 503, 403 A.2d 1221, 1223 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980). In the present case, however, neither side at the certiorari stage sought an affirmance of the trial court's decision, and the non-applicability of the federal exclusionary rule was not raised in the certiorari petition or in a cross-petition. *See*

*State v. Lancaster,* 332 Md. 385, 402 n. 12, 631 A.2d 453, 462 n. 12 (1993) ("In a case before us which has been decided by the Court of Special Appeals the principle that a trial court will be affirmed for any reason adequately shown by the record is applicable only if the ground was presented in a petition for a writ of certiorari, in a cross-petition, or in this Court's order granting certiorari"); *Maryland State Police v. Zeigler,* 330 Md. 540, 562–563, 625 A.2d 914, 925 (1993).

 Nevertheless, we shall assume *arguendo* that, under federal law, *Hudson v. Michigan* controls the Fourth Amendment issue in this case, and that the Fourth Amendment's exclusionary rule is inapplicable to any violations of the "knock and announce" principle that may have occurred in the case at bar. We shall decide, however, that, under the peculiar circumstances of this case, the evidence is excludable if there is a violation of Maryland's "knock and announce" principle. This is a very limited decision based *exclusively* upon Maryland non-constitutional law and procedure. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983); *Green Party v. Board of Elections,* 377 Md. 127, 139, 832 A.2d 214 (2003); *Dua v. Comcast Cable,* 370 Md. 604, 618 n. 6, 805 A.2d 1061, 1069–1070 n. 6 (2002); *Frankel v. Board of Regents,* 361 Md. 298, 313–314 n. 3, 761 A.2d 324, 332 n. 3 (2000); *Perry v. State,* 357 Md. 37, 86 n. 11, 741 A.2d 1162, 1189 n. 11 (1999).

## IV.

As previously discussed, the reversal of the judgments and remand in *Davis and Adams v. State, supra,* 383 Md. 394, 859 A.2d 1112, were based upon both the Fourth Amendment and Maryland common law. The decision under Maryland law was logically grounded upon the applicability of an exclusionary rule for violations of the Maryland common law "knock and announce" principle. While the decision in *Henson v. State, supra,* 236 Md. 518, 204 A.2d 516, was in favor of the State, the Court held that "the evidence seized was admissible against the appellant" solely on the ground that there was no

violation of Maryland's common law "knock and announce" principle. *Henson*, 236 Md. at 524, 204 A.2d at 520. Furthermore, although *Henson* was decided when the Bouse Act was still in effect, that statute was inapplicable because the defendant was tried for and convicted of felonies.

The State's response is that, because Article 26 of the Maryland Declaration of Rights and Maryland's common law "knock and announce principle" have been construed as being *in pari materia* with the Fourth Amendment, we should follow *Hudson v. Michigan, supra*, in applying either Article 26 or Maryland common law to "knock and announce" violations.

This Court has emphasized on numerous occasions, however,

"that, simply because a Maryland constitutional provision [or common law principle] is *in pari materia* with a federal one or has a federal counterpart, does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart. Furthermore, cases interpreting and applying a federal constitutional provision are only persuasive authority with respect to the similar Maryland provision." *Dua v. Comcast Cable, supra*, 370 Md. at 621, 805 A.2d at 1071 (emphasis in original).

More than twenty-five years ago, Judge J. Dudley Digges for the Court in *Attorney General v. Waldron*, 289 Md. 683, 714, 426 A.2d 929, 946 (1981), stated that, although a federal constitutional and a Maryland constitutional provision

"are 'in pari materia,' and decisions applying one provision are persuasive authority in cases involving the other, we reiterate that each provision is independent and a violation of one is not necessarily a violation of the other."

Turning specifically to Article 26 of the Maryland Declaration of Rights, Judge Marvin Smith for the Court in a 1981 case interpreting and applying Article 26, *Gahan v. State, supra*, 290 Md. at 322, 430 A.2d at 55, emphasized that,

"although a clause of the United States Constitution and one in our own Declaration of Rights may be 'in pari materia,'

and thus 'decisions applying one provision are persuasive authority in cases involving the other, we reiterate that each provision is independent, and a violation of one is not necessarily a violation of the other.' " [8]

*See also, e.g., Prince George's County v. Ray's Used Cars,* 398 Md. 632, 641 n. 5, 922 A.2d 495, 500 n. 5 (2007) (The taking clauses of United States and Maryland Constitutions are subject to different standards); *Green Party v. Board of Elections, supra,* 377 Md. at 157, 832 A.2d at 232 (Federal and Maryland guarantees of equal protection are independent and capable of divergent application); *Frankel v. Board of Regents,* 361 Md. 298, 313, 761 A.2d 324, 332 (2000) (same); *Verzi v. Baltimore County,* 333 Md. 411, 417, 635 A.2d 967, 970 (1994) (same); *Choi v. State,* 316 Md. 529, 535–536 n. 3, 560 A.2d 1108, 1111 n. 3 (1989) (Article 22 of the Maryland Declaration of Rights, although "generally *'in pari materia'* with its federal counterpart," in "two situations ... has been viewed differently, and more broadly, than the privilege under the Fifth Amendment").

Consequently, simply because Article 26 of the Maryland Declaration of Rights and the Maryland common law "knock and announce" principle may *generally* be *in pari materia* with the Fourth Amendment, does not require that, in the case at bar, we reconsider the state law holdings of *Davis and Adams v. State, supra,* and other cases.

There is a compelling reason why the present case is a particularly inappropriate vehicle for such reconsideration. The State failed to challenge the adverse decision of the Court of Special Appeals, or raise the issue of a Maryland exclusionary rule, by filing a cross-petition for a writ of certiorari. Although the petitioner Parker relied on Maryland law as well

---

**8.** The United States Supreme Court, in *Maryland v. Garrison,* 480 U.S. 79, 83–84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72, 80 (1987), reversing this Court's judgment which was based, *inter alia,* on Article 26 of the Maryland Declaration of Rights, relied upon this Court's statements that "the Maryland constitutional provision is construed *in pari materia* with the Fourth Amendment." The Supreme Court was apparently unaware of *Gahan, Waldron,* and similar cases.

as the Fourth Amendment, both in his Court of Special Appeals' brief and in his certiorari petition, and the Court of Special Appeals' vacation of the judgments and remand for a new suppression hearing was based entirely on the *Davis and Adams* and *Carroll* cases in this Court,[9] the State did not file a cross-petition for certiorari. On the contrary, the State's answer argued in favor of the Court of Special Appeals' decision vacating the Circuit Court's judgments and ordering a new suppression hearing.

As earlier discussed, in *Kostelec v. State, supra,* 348 Md. 230, 703 A.2d 160, the Circuit Court refused to suppress evidence which was allegedly seized in violation of Maryland law (former Art. 27, § 551(a)), the defendant was convicted of a controlled dangerous substance offense, and the Court of Special Appeals affirmed the conviction, holding that the evidence had not been illegally seized. The issue in *Kostelec* was whether so-called "anticipatory search warrants" were authorized by Maryland law, and the Court of Special Appeals reasoned that, because it had earlier held "that anticipatory warrants did not violate the Fourth Amendment," they did not violate Maryland law because the pertinent Maryland search and seizure law "should be construed *in pari materia* with the Fourth Amendment to permit anticipatory search warrants." *Kostelec,* 348 Md. at 235, 703 A.2d at 162. Furthermore, the Court of Special Appeals' *Kostelec* opinion did cite *Chu v. Anne Arundel County, supra,* 311 Md. 673, 537 A.2d 250, "observing ... that [former Art. 27,] § 551(a) is not an exclusionary rule," *Kostelec,* 348 Md. at 242, 703 A.2d at 166.

The defendant in *Kostelec* filed a petition for a writ of certiorari, and the State, in its answer, "simply asserted that the Court of Special Appeals '... correctly held that Section 551 of Article 27 does not preclude the issuance of [an] anticipatory warrant.' " *Kostelec,* 348 Md. at 242, 703 A.2d at 166. As in the instant case, however, "[f]or the first time in the entire course of this litigation, the State in its brief in this

---

**9.** The Court of Special Appeals' opinion in this case did not cite a single Supreme Court or federal "knock and announce" case.

Court" argued "that § 551(a) does not embody an exclusionary rule," *Kostelec,* 348 Md. at 240, 703 A.2d at 165. Judge Rodowsky for the Court in *Kostelec* continued (348 Md. at 242–243, 703 A.2d at 166):

"Further, although the Court of Special Appeals had referred to … the *Chu* opinions, the State did not attempt to raise by conditional cross-petition for certiorari the issue that there was no suppression remedy for a violation limited to noncompliance with § 551(a).

\* \* \*

"From the time Kostelec filed his motion to suppress in the circuit court through the grant of the writ of certiorari by this Court, this case proceeded on the assumption by Kostelec and by the representatives of the State that the remedy would be suppression of the evidence if the search warrant were issued in violation of § 551(a). Inasmuch as § 551(a) was violated and there has been no previous challenge to Kostelec's assertion of a right to suppression as the remedy for that violation, the motion to suppress should be granted under the unique procedural history of the case. *See* Maryland Rule 8–131(b)(1)."

With respect to the issue of whether a Maryland exclusionary rule is applicable under the circumstances, the present case is even less favorable for the State than was *Kostelec.* In *Kostelec,* the Court of Special Appeals' *judgment* was entirely in the State's favor, but the State was precluded from arguing the state-law exclusionary rule issue only because of its failure to raise the issue in a cross-petition for certiorari as required by Maryland Rule 8–131(b). In the case now before us, in addition to the violation of Rule 8–131(b), the State in its brief and oral argument seeks to *reverse* an adverse Court of Special Appeals judgment which it failed to challenge in a timely matter.

■ To repeat, the Court of Special Appeals *vacated* the judgments of the trial court and remanded the case for a new suppression hearing with specific directions. Although Par-

ker's certiorari petition challenged the Court of Special Appeals' directions, it did not challenge the vacation of the Circuit Court's judgments. If the State were aggrieved by the vacation of the Circuit Court's judgments and the remand for a new suppression hearing, and desired a reversal of the Court of Special Appeals' judgment, it was incumbent upon the State to seek timely review of the intermediate appellate court's judgment pursuant to Maryland Code (1974, 2006 Repl.Vol.), §§ 12–201, 12–203, and 12–307(1) of the Courts and Judicial Proceedings Article, and Maryland Rules 8–301 through 8–303.[10] *See, e.g., Sterling v. Atlantic Automotive Corporation,* 399 Md. 375, 382–386, 924 A.2d 328, 332–335 (2007); *State v. Anderson,* 320 Md. 17, 26–27, 575 A.2d 1227, 1231 (1990); *Houghton v. County Comm'rs of Kent County,* 305 Md. 407, 411, 413, 504 A.2d 1145, 1147–1148 (1986). *See also, e.g., Rondeau v. Mosinee Paper Corporation,* 422 U.S. 49, 61 n. 11, 95 S.Ct. 2069, 2077 n. 11, 45 L.Ed.2d 12, 22–23 n. 11 (1975) ("This point [argued in respondent's brief] was not raised in the petition for certiorari . . ., nor was it made the subject of a cross-petition. Because it would alter the judgment of the Court of Appeals, . . . we will not consider the argument when raised in this manner"); *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 401 n. 2, 95 S.Ct. 1708, 1711 n. 2, 44 L.Ed.2d 251, 256 n. 2 (1975) ("However, absent a cross-petition for certiorari, the respondent may not now challenge the judgment of the Court of Appeals to

---

**10.** Section 12–201 of the Courts and Judicial Proceedings Article, which is the basic provision, states as follows (emphasis added):

" **§ 12–201. Certiorari to Court of Special Appeals.**

"Except as provided in § 12–202 of this subtitle, in any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court or an orphans' court or the Maryland Tax Court, *any party, including the State, may file in the Court of Appeals a petition for certiorari to review the case or proceeding.* The petition may be filed either before or after the Court of Special Appeals has rendered a decision, but not later than the time prescribed by the Maryland Rules. In a case or proceeding described in this section, the Court of Appeals may issue the writ of certiorari on its own motion."

This Court in the present case did not, pursuant to the last sentence of § 12–201, issue a writ of certiorari on its own motion.

enlarge its rights thereunder"); *Strunk v. United States,* 412 U.S. 434, 437, 93 S.Ct. 2260, 2262, 37 L.Ed.2d 56, 60 (1973) (applying the principle to the prosecution's argument in a criminal case); *Mills v. Electric Auto–Lite Company,* 396 U.S. 375, 381 n. 4, 90 S.Ct. 616, 620 n. 4, 24 L.Ed.2d 593, 600–601 n. 4 (1970); *Labor Board v. Express Publishing Co.,* 312 U.S. 426, 431–432, 61 S.Ct. 693, 697–698, 85 L.Ed. 930, 935 (1941).

■ Moreover, as previously pointed out, the State in its answer to the certiorari petition took the position that the Court of Special Appeals' judgment was correct. The State, therefore, *consented* to the judgment of the Court of Special Appeals which overturned the Circuit Court's judgments and remanded the case for anew suppression hearing. It is a firmly established principle of Maryland law, however, that a party may not obtain appellate review of a judgment to which the party consented. *See, e.g., Suter v. Stuckey,* 402 Md. 211, 223, 935 A.2d 731, 738 (2007) ("We have had many opportunities to reaffirm the basic principle that a judgment, if it was consented to, cannot be appealed," and cases there cited); *Osztreicher v. Juanteguy,* 338 Md. 528, 534–535, 659 A.2d 1278, 1281 (1995) (Right to appellate review "may be lost by acquiescence in, or recognition of, the validity of the decision below. . . ." In addition, "[a]cquiescence implies consent. . . ." A "litigant who acquiesces in a ruling is completely deprived of the right to complain about that ruling"); *Globe American v. Chung,* 322 Md. 713, 717, 589 A.2d 956, 958 (1991) ("Where a party consents to a judgment in a case, the party ordinarily may not . . . obtain review of an earlier adverse ruling in that case"); *Franzen v. Dubinok,* 290 Md. 65, 69, 427 A.2d 1002, 1004 (1981) ("[A] voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review"); *Lohss and Sprenkle v. State,* 272 Md. 113, 118–119, 321 A.2d 534, 537–538 (1974). The State in its brief and oral argument seeks to reverse a Court of Special Appeals' judgment to which the State had consented. Such a reversal would be contrary to settled Maryland law.

Consequently, if there was a violation of Maryland's common law "knock and announce" principle in this case, the evidence is inadmissible under the particular circumstances here. Whether such an exclusionary rule should be applied when there are violations of the Maryland "knock and announce" principle in other cases, or in cases arising after the effective date of Ch. 560 of the Acts of 2005, are matters which we leave for another day.

We agree with the Court of Special Appeals that Terrance Parker's controlled dangerous substance conviction should be vacated. This matter should be remanded to the Circuit Court for a new suppression hearing and determination. *See Southern v. State*, 371 Md. 93, 104–112, 807 A.2d 13, 20–24 (2002), and cases there cited. While the Circuit Court, at the conclusion of the prior suppression hearing, considered the factual showing (or absence thereof) made by the police officers at the time of the warrant application, the court did not "review ... the facts known to the officers at the time of entry," *Davis and Adams v. State, supra*, 383 Md. at 427–428, 859 A.2d at 1132. In addition, we disagree with the Court of Special Appeals' direction for the Circuit Court to determine whether "the evidence seized is nonetheless admissible under the 'good faith' exception to the exclusionary rule." In light of our opinion in *Davis and Adams v. State, supra*, at least in cases not subject to Ch. 560 of the Acts of 2005, the so-called "good faith" exception, applied by the Court of Special Appeals, is not applicable under the Maryland common law "knock and announce" principle.

Upon remand, the Circuit Court should decide whether the evidence was admissible under the principles of this Court's opinions in *Davis and Adams v. State* and *State v. Carroll.* If the court determines that the evidence was admissible, the controlled dangerous substance conviction should be reinstated. If the court decides that the evidence should be suppressed under *Davis and Adams v. State* and *State v. Carroll,* the controlled dangerous substance conviction should remain vacated and a new trial ordered on that count.

## V.

After entering the 800 Belnord Avenue residence, police officers recovered a .357 magnum handgun from the second floor hall. The Circuit Court convicted Parker of having possession of that handgun under former Article 27, § 445(d)(1), which states that a person who has previously been convicted of a felony "may not possess a regulated firearm." We shall reverse the judgment below on the firearm count and hold that the evidence was insufficient to convict Parker of possession of the handgun. The evidence does not show directly or support a rational inference of Parker's guilt under former Article 27, § 445(d)(1). *See Moye v. State,* 369 Md. 2, 12–13, 796 A.2d 821, 827 (2002) ("[W]e must determine whether the jury's verdict was supported by either direct or circumstantial evidence by which any rational trier of fact could find [the defendant] guilty beyond a reasonable doubt of ... possession"); *White v. State,* 363 Md. 150, 162, 767 A.2d 855, 862 (2001); *Garrison v. State,* 272 Md. 123, 128, 321 A.2d 767, 770 (1974).

In order for the evidence supporting the handgun possession conviction to be sufficient, it must demonstrate either directly or inferentially that Parker exercised "some dominion or control over the prohibited [item]...." *Moye v. State, supra,* 369 Md. at 13, 796 A.2d at 828 (internal quotation marks omitted); *McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675, 686 (1997); *State v. Leach,* 296 Md. 591, 596, 463 A.2d 872, 874 (1983). Possession may be actual or constructive, and may be either exclusive or joint. *Moye,* 369 Md. at 14, 796 A.2d at 828; *Taylor v. State,* 346 Md. 452, 458, 697 A.2d 462, 465 (1997). A possession conviction normally requires knowledge of the illicit item. As the Court reiterated in *Moye,* " 'an individual ordinarily would not be deemed to exercise "dominion or control" over an object about which he is unaware. Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control.' " *Moye,* 369 Md. at 14, 796 A.2d at 828, quoting *Dawkins v. State,* 313 Md. 638, 649, 547 A.2d 1041, 1046 (1988).

In *Moye v. State,* this Court reversed Moye's conviction for possession of a controlled dangerous substance because the evidence was insufficient. In that case, police discovered drugs in the basement of a home where the defendant Moye was residing. Before the discovery of the contraband, police outside of the residence had observed Moye on the first floor and in the basement. The subsequent search of the home revealed three open or partially open drawers in the basement containing marijuana and drug paraphernalia. In addition, police observed a missing ceiling panel in the basement and discovered marijuana and crack cocaine in the ceiling. In holding the evidence insufficient, we explained that there was "nothing but speculation as to Moye's knowledge or exercise of dominion or control over the drugs and paraphernalia found in the ... basement." *Moye,* 369 Md. at 17, 796 A.2d at 830. Furthermore, the Court emphasized that nothing in the record established the defendant's ownership interest in the home. The record also failed to establish Moye's proximity to the drugs during the time he was in the basement. There was no evidence to "establish where Moye was located in the basement in relation to the substances in question and the duration of his sojourn." *Moye,* 369 Md. at 18, 796 A.2d at 830–831. The Court also stated that "we are confronted with a situation where a person has been convicted of possessing controlled dangerous substances and yet we cannot gauge whether he even knew the contraband was in the basement and controlled or exercised dominion over the CDS." *Moye,* 369 Md. at 20, 796 A.2d at 832.

As in *Moye,* nothing in the record established Terrance Parker's ownership of or a possessory interest in the home. In fact, the evidence did not show whether Parker was residing in the home at the time or simply was visiting Evania Wilkens who did live there. In *Moye,* the State had established that Moye was residing in the home and had been on the same floor as the contraband, but such evidence was deemed insufficient to establish possession. Here, there is even less evidence to support Parker's conviction. The State failed to establish that Parker had any proximity to the

handgun. The 800 Belnord Avenue home is three stories (*i.e.*, the basement, the first floor, and the second floor), and the gun was found on the second floor. Nothing in the record indicates where the police observed Parker in the home, whether he had access to the second floor, or how long he had been in the house. The record does not show that Parker was ever on the same floor of the house where the handgun was found.

In addition, the record does not indicate where in the second floor hall the handgun was located or whether the gun was in plain view. In *Garrison v. State, supra*, 272 Md. 123, 321 A.2d 767, this Court reversed a conviction for possession with intent to distribute heroin. The Court emphasized that "[t]he seized heroin was not in the plain view of [Garrison], nor was there a juxtaposition between her (in the front bedroom) and the contraband being jettisoned by her husband in the bathroom." *Garrison*, 272 Md. at 131, 321 A.2d at 771. The record in the present case does not contain evidence supporting a reasonable inference that Parker had ever seen the gun, had the opportunity to see the gun, or was aware of it. With no established interest or residence in the house, it cannot reasonably be inferred that Parker was cognizant of all of the house's contents.

The State relies on *State v. Suddith*, 379 Md. 425, 842 A.2d 716 (2004), and *Birchead v. State*, 317 Md. 691, 566 A.2d 488 (1989), to support its sufficiency argument. Both of these cases are distinguishable. In *Suddith*, police recovered drugs following a police chase of a stolen SUV. During the chase, the driver of the stolen SUV lost control and the vehicle rolled over three times. A search of the SUV revealed a variety of drugs and drug paraphernalia "scattered throughout the vehicle." *Suddith*, 379 Md. at 428, 842 A.2d at 718. Suddith, one of the vehicle's occupants, was subsequently convicted of possession of the contraband. This Court held that the evidence was sufficient to prove that Suddith was in constructive possession of the drugs and drug paraphernalia. The majority opinion stated that the "jurors, knowing the size and quantity of the items recovered and seeing the size of the Explorer,

could have reasonably concluded that the items were too bulky and/or numerous to be normally placed in a concealed area in that particular vehicle." *Suddith,* 379 Md. at 444, 842 A.2d at 727. One gun in a three story, multi-room home, is hardly analogous to a large quantity of drugs strewn about a single motor vehicle.

*Birchead v. State, supra,* involved a conviction for possession of cocaine and drug paraphernalia discovered pursuant to a search of a motel room. The evidence placed Birchead in the motel room before and during the search. Furthermore, drugs (1.7 grams of loose cocaine) were "in plain view on top of the television," *Birchead,* 317 Md. at 705, 566 A.2d at 495. In addition, the evidence revealed that "[o]n the floor near the sink were weighing scales. On top of the counter near the sink ... was a box of baking soda and a bottle of Inositol powder, commonly used as an agent to prepare cocaine for distribution. A clear baggy containing 25 grams of cocaine was located at the end of the television counter in plain view. Birchead's wallet was found next to the metal sifter, the hand torch and the box of razor blades." *Birchead,* 317 Md. at 705–706, 566 A.2d at 495. The State argues that *Birchead* is instructive because it demonstrates that "evidence of contraband pervasive in a dwelling [supports] a rational inference that the occupants of the dwelling had knowledge and exercised dominion and control over the contraband." (State's brief at 10). In the case at bar, however, the contraband possession issue before this Court concerns the handgun and not the drugs which were found in the house. The lone handgun found on the second floor was certainly not "pervasive" in the dwelling in the same way that the drug-related contraband was "pervasive" and in plain view throughout a single motel room in *Birchead.*

The State also suggests that, because "guns are a tool of the drug trade," the amounts of drugs found on Parker's person and in the house "allow a reasonable inference of Parker's constructive possession of the handgun" (State's brief at 8–9). The State cites no case or other authority that would support such an attenuated inference. Many items, not falling in the

category of drugs or drug paraphernalia, are "tools" or commonly used in "the drug trade." They include items such as stolen vehicles, vans with thick ceilings, suitcases, boxes, carrying bags, other containers, etc. Under the State's theory, a visitor to a house, found on the first floor with illegal drugs on his or her person, might "constructively possess" a stolen car parked outside of the house nearby or a suitcase found in a third floor closet. The inference drawn by the State is simply not reasonable.

▎ The "mere proximity to the [contraband], mere presence on the property where it is located, or mere association, without more, with the person who does control the ... property on which it is found, is insufficient to support a finding of possession." *Taylor v. State, supra,* 346 Md. at 460, 697 A.2d at 466. Terrance Parker's degree of proximity to the handgun found on the second floor of 800 Belnord Avenue is unknown. Except for his presence in the house at the time of the search, Parker's connection to 800 Belnord Avenue is unclear. The evidence is totally insufficient to support an inference that Parker knowingly exercised dominion or control over the handgun.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY WITH RESPECT TO THE CONVICTION FOR POSSESSION OF A FIREARM. AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS AS SET FORTH IN THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*

RAKER, J., dissenting:

Unless this Court is prepared to state explicitly that the Court decides this case on Article 26 of the Maryland Declara-

tion of Rights and that the Court deviates from Fourth Amendment jurisprudence as explicated by the United States Supreme Court, the judgment of the Circuit Court on the Motion to Suppress evidence should be affirmed, based on *Hudson v. Michigan,* 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). *See e.g., U.S. v. Acosta,* 502 F.3d 54 (2nd Cir.2007) (applying *Hudson v. Michigan,* even though *Hudson* was decided after defendant was convicted and his case was on appeal). *Hudson* held that the exclusionary rule did not apply to Fourth Amendment knock-and-announce violations.

Notwithstanding our opinion in *Kostelec v. State,* 348 Md. 230,.703 A.2d 160 (1997), I do not believe that "the peculiar circumstances of a case" should be the source of an exclusionary rule, or that perfectly reliable evidence should be excluded merely because the State failed to argue a particular ground, particularly one based upon a Supreme Court decision that arose after the petition for certiorari was granted. A case by case determination that results in exclusion of evidence, without a bright line rule to be applied, such as a state exclusionary rule as a part of Article 26, serves no deterrent purpose. As Judge Moylan pointed out in *State v. Savage,* 170 Md.App. 149, 906 A.2d 1054 (2006):

"... *Hudson v. Michigan* reminds us that the exclusion of evidence is by no means an automatic sanction to be blithely taken for granted. The exclusion of evidence is branded as a sanction that exacts a heavy cost.

'*Suppression of evidence,* however, *has always been our last resort, not our first impulse. The exclusionary rule generates 'substantial social costs,'* United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which sometimes include setting the guilty free and the dangerous at large. *We have* therefore been 'cautio[us] against expanding' it, *Colorado v. Connelly,* 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and 'have *repeatedly emphasized that the rule's 'costly toll'* upon truth-seeking and law enforcement objectives *presents a high obstacle for those urging [its] application,'* Pennsyl-

*vania Bd. of Probation and Parole v. Scott,* 524 U.S. 357, 364–365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998).

[547 U.S. at 591] 126 S.Ct at 2163, 165 L.Ed.2d at 64 (emphasis supplied)."

*Id.* at 200–01, 906 A.2d at 1083.

Accordingly, I would affirm the Circuit Court's ruling and hold that the motion to suppress was denied properly, *albeit* for different reasons than that stated by the Court of Special Appeals.